**Joe Lane USSERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64538.**

Court of Criminal Appeals of Texas, En Banc.

May 11, 1983.

Robert F. Watson, Mineral Wells, for appellant.

Wayne Hughes, Dist. Atty. and Bailey F. Rankin, Asst. Dist. Atty., Granbury, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at life imprisonment in the Texas Department of Corrections. The appellant in twelve grounds of error contends that the trial court erred in admitting his confession, in admitting an incriminating statement made by appellant, in refusing to grant his motion for change of venue, in refusing to permit defense counsel to discuss civil commitment procedure during jury voir dire, and by permitting the prosecutor to read to the jury appellant's testimony given during the hearing on appellant's motion to suppress.

Although the appellant does not challenge the sufficiency of the evidence, a recital of the facts is necessary to discussion of appellant's grounds of error. The record establishes that in the early morning hours of January 24, 1974, at about 2:00 a.m., the appellant called the Mineral Wells police and reported that he had heard screams coming from the apartment of the deceased. When the police arrived they talked to the appellant and to other persons living in the apartments. The appellant told officers that he heard the deceased scream and that he then called the police. After the appellant had made two inconsistent statements,[1] he was given warnings as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) by the investigating officer. The appellant was asked to accompany the officers to the police station, and he did so. The appellant was questioned at the police station until about 7:00 a.m. when at appellant's request he was taken to his mother's home. The appellant was picked up again at 5:00 p.m. that evening and taken back to the police station. Upon his arrival he was again given full *Miranda* warnings although he was not formally arrested. After questioning by Officer Gillilan and Chief of Police Becknal for approximately one to one and half hours the appellant told them that he had hit the deceased with a metal object. Questioning continued until about 10:30 p.m. when the appellant made a full, oral confession.[2] The appellant took the officers

---

1. The appellant initially stated that he had not entered the deceased's apartment. Sometime later he told the investigating officers that he decided to call the police when he saw all the blood inside the apartment.

2. In his confession the appellant stated: that he broke into the deceased's apartment with the intention of knocking her out by hitting her on the head with a skillet and then having sexual intercourse with her; that he hit her once and

to his apartment, where they recovered and tagged the skillet, a towel, and a knife. After returning to the police station at approximately 12:30 a.m. the appellant executed a written waiver of his rights. The appellant was read his rights as stated in the waiver, and he stated that he understood his rights and that he wished to waive them. The appellant then executed and signed a written confession. The deceased died the following day from the injuries sustained in the attack.

At the outset we are confronted with the appellant's contention that his oral confession was inadmissible because it was the product of an illegal detention and arrest. Focusing on the police officer's initial contact with the appellant, we note that the appellant literally thrust himself under the scrutiny of the investigating officers at the scene of the crime by telephoning the police and by meeting them when they arrived. The questioning of the appellant at that time was not a Fourth Amendment "seizure" under such circumstances. See *Martinez v. State*, 635 S.W.2d 629 (Tex.App. Austin 1982). The temporary detention of the appellant for the purpose of investigation was justified, even though circumstances were short of probable cause to arrest. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978). Further field investigation and detention was warranted by the inconsistent statements made by appellant to the investigating officers, for, together with the appellant's presence at the scene of the crime, the police officers may have had reasonable or articulable suspicion that the appellant was connected with the commission of the crime. See *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr.App.1978).

The second step of the police officers' contact with the appellant, that is, the taking of the appellant to the police station for questioning, however, raised additional issues which we must address. First, we note that *Terry*, supra, and related Supreme Court decisions created only a limited exception to the general rule that seizures require probable cause to arrest. A detention for investigatory purposes must be limited; it must be temporary and last no longer than necessary to effect the progress of the stop. *Adams v. Williams*, supra.

The State proffers several reasons for holding that the detention of appellant was not illegal. First, it is submitted that appellant went voluntarily with the police to the police station and that one police officer specifically told the appellant that he could leave at any time. Indeed, after intermittent questioning between 3:00 a.m. and 7:00 a.m., the appellant's request that he be taken home was honored. However, it is unclear from the record at what point during the interrogation the appellant was told that he was free to leave.

The mere facts that the appellant went voluntarily, that he was not formally arrested nor booked, and that he was eventually taken home do not make the detention analogous to the narrowly defined intrusions involved in *Terry*, supra, et al. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Florida v. Royer*, —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). What had begun as a consensual inquiry in a public place appears to have escalated into full police interrogation in which the police sought to extract a confession. *Florida v. Royer*, supra.

When appellant was picked up at his mother's home at 5:00 p.m. that same evening, he was not told that he was free to go, although he was not *formally arrested* at that time. During this second detention, which was not authorized by a judicial officer, the appellant was given the warnings required by *Miranda*, supra, and was then interrogated again. We find this detention to be virtually indistinguishable from a *traditional arrest*, and therefore it must be supported by probable cause. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Cf. *Clark v. State*, 627

---

she began screaming; that he hit her two more times and then ran from her apartment.

S.W.2d 693 (Tex.Cr.App.1982). The State concedes in its brief on appeal that no sufficient probable cause for the appellant's arrest existed at either the early morning or evening detention, and we agree.[3] The appellant was illegally detained.

■ Our next determination must then be whether the appellant's confession was obtained as a result of the illegal arrest.[4] The Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), articulated several factors to be considered in making this determination.

"The temporal proximity of the arrest and the confession, the arrest and the confession, the presence of intervening circumstances, and particularly the purpose and flagrancy of the official misconduct."

The state argues that there was no causal connection between this arrest and the incriminating statement. The record shows that the appellant made his first incriminating statement approximately one to one and a half hours after his seizure by Officer Gillilan. The record discloses no intervening circumstances. Officer Gillilan testified that upon their arrival at the police station he read the appellant his constitutional rights according to *Miranda* and thereafter began to question the appellant. It was during this questioning that the appellant said he hit the deceased with a metal object. The giving of the *Miranda* warnings alone cannot serve to purge the taint. *Brown v. Illinois,* supra; *Dunaway v. New York,* supra; *Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

■ The state further argues that questioning was not continuous after the incriminating statement was made and before the full confession was given. While it is true that during this period the appellant was given coffee and allowed to talk with Jack Dickens, his alcoholic program counselor, we cannot say that there existed such intervening events which would break the connection between the confession and the arrest.[5] *Taylor v. Alabama,* supra.

■ While we decline to condemn the police officers' conduct as flagrant, the purpose and impropriety of their acts are clear. The record shows and the state admits that the police officers interrogating the appellant had no probable cause to effect the arrest, but that he was in fact arrested, or "seized" according to *Brown v. Illinois,* supra for investigation purposes. In fact, Officer Monte Parker testified that he would have kept the appellant there at the police station until he "got to the truth of this matter." The fact that the police did not physically abuse the appellant, or that the confession they obtained may have been "voluntary" for purposes of the Fifth Amendment, does not cure the illegality of the initial arrest. *Taylor v. Alabama,* supra, 102 S.Ct. at p. 2669.

■ Clearly no intervening events broke the connection between the appellant's arrest and confession. We hold that the state has failed to meet its burden of showing that the appellant's oral and written confessions were admissible. The trial court erred

---

3. The State's witnesses at the hearing on appellant's motion to suppress and at trial testified that there existed no probable cause to arrest the appellant early that morning and that during the morning questioning and throughout the day no other evidence linking the appellant to the offense was found. Those facts on which the police based their reasonable suspicion were merely the appellant's inconsistent statements and his presence near the scene of the crime.

4. After the hearing on appellant's motion to suppress the trial court found that the appellant was warned of his constitutional rights, and concluded that he gave his confession voluntarily. Because the trial judge is the sole

trier of fact at a hearing upon a motion to suppress, we are not at liberty to disturb any finding which is supported by the record. *McKittrick v. State,* 541 S.W.2d 177 (Tex.Cr. App.1976). Our attention must therefore focus on whether the state had met its burden of establishing that the appellant's confession was not the product of his illegal detention and arrest.

5. We also note that Dickens testified that he told the appellant to tell the truth to the police and that he [appellant] could get the hospitalization he had requested once he "cleared this up" with the police.

by permitting its introduction before the jury. See *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981), cert. den. 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 and *Duncan v. State*, 639 S.W.2d 314 (Tex.Cr.App.1982). For the same reasons we hold that the trial court erred in admitting the defendant's initial incriminating statement that he hit the deceased with a metal object. It appears to us that the seizure of physical evidence from the appellant's apartment was derivative of the illegally obtained confession. However, the record is unclear as to whether the taint was removed by any attenuation between the confession and the seizure.

The appellant contends that the trial court erred in refusing to grant his motion for a change of venue. At the hearing on appellant's motion to suppress his confessions, the court's ruling that the confession was voluntary was reported by the Mineral Wells newspaper. The appellant argues that all prospective jurors had advance notice as to the court's ruling and that no prospective juror with advance notice of this ruling could exclude from his or her mind that fact that the confessions were freely and voluntarily given.

The appellant offered the testimony of several citizens of Mineral Wells who each expressed their opinion that appellant could not receive a fair trial in Palo Pinto County. The State presented rebuttal testimony of citizens of Palo Pinto County who expressed their opinion that appellant could receive a fair trial. The record contains a transcript of the jury voir dire. Each of the veniremen were examined and only a few read anything about the case. Not one venireman had read the account about the appellant's confessions and the court's ruling.

The applicant for a change of venue has a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful, and absent such a showing, the trial judge is within the limits of his discretion in denying a change of venue. *James v. State*, 546 S.W.2d 306 (Tex.Cr.App.1977). The trial court did not abuse its discretion by refusing the appellant's motion. *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1979); *VonByrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978), cert. den. 44 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073, reh. den. 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 123.

The appellant contends that the trial court erred in refusing to permit appellant's counsel to discuss during jury voir dire the effect of civil commitment procedure when a defendant is found to be not guilty by reason of insanity. Decisions about the propriety of questioning in jury voir dire is left to the discretion of the trial court and review will be only for abuse of this discretion. *Patterson v. State*, 598 S.W.2d 265 (Tex.Cr.App.1980) and *Milton v. State*, 599 S.W.2d 824 (Tex.Cr.App.1980), cert. den. 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981), reh. den. 453 U.S. 923, 101 S.Ct. 3160, 69 L.Ed.2d 1006 (1981). We find no abuse of discretion in the instant case.

The appellant complains of the introduction into evidence of portions of his testimony taken at the pretrial hearing on his motion to suppress. The testimony was read by Dr. June Garrett at the request of the prosecutor during his cross-examination of her for the purpose of impeaching her conclusion that the appellant could not make a complete sentence. The appellant's objections that the reading of the testimony was improper, that it was not "proving a thing in the world," that the questions "don't answer any question or solve any problem," and that they were "not germane to any issue in this trial" were too general to show error. Where the only objection to a witness' testimony was a general one without stating any ground, such objection was too general to inform the trial court of the basis of the complaint. *Scott v. State*, 471 S.W.2d 379 (Tex.Cr.App.1971); *Franklin v. State*, 494 S.W.2d 825 (Tex.Cr.App. 1973). The court did not err in overruling the appellant's objections.

The appellant in a supplemental brief filed in this Court designates as fundamen-

tal error the trial court's failure to properly charge the jury as to that count of the indictment alleging that the appellant committed the offense of murder as per Sec. 19.02, (a)(2), V.T.C.A. Penal Code.

Count Four of the indictment alleged that the appellant:

> "... did then and there intentionally and knowingly and intending to cause serious bodily injury to an individual, P____S____W____, commit an act clearly dangerous to human life, to-wit: did then and there strike the said P____S____W____ on the head with a skillet, thereby causing the death of the said individual, P____S____W____."

The appellant acknowledges that the court properly instructed the jury as to Sec. 19.02(a)(1), supra, but that the court's instruction as to Sec. 19.02(a)(2), supra, constitutes fundamental error.

■ The court's charge to the jury relating to Sec. 19.02(a)(2), supra, reads as follows:

> "... in that the Defendant with intent to cause P____S____W____ serious bodily injury did strike the same P____S____W____...."

Appellant argues that the omission of the requirement that the jury find that the appellant did *intentionally and knowingly* strike the deceased renders the charge fundamentally defective. We disagree. The words "intentionally and knowingly" in the Count Four of the indictment were surplusage.[6] The essential elements of murder under Sec. 19.02(a)(2), supra, are: (1) a person (2) intends to cause serious bodily injury and (3) commits an act clearly dangerous to human life (4) that causes the death of an individual. The court's charge did not omit the second element enumerated above, but rather, omitted the surplus phrase "intentionally and knowingly" in the indictment.

The appellant's supplemental brief directs our attention to the decision in *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979) which delineated those jury charges found to be fundamentally erroneous into three groups: (1) authorization of any diminution of the state's burden of proof, (2) authorization of conviction for conduct which does not constitute a criminal offense, and (3) authorization of conviction for an offense of which the accused has no notice.

■ The complained of omission before us is not an omission of an entire essential element of the offense charged. Cf. *West v. State,* 567 S.W.2d 515 (Tex.Cr.App.1978). The court's charge here did not omit an allegation in the indictment *which was required to be proved.* See *Cumbie v. State,* supra, at 733. The appellant made no objection to the omission as required by Art. 36.14, V.A.C.C.P., nor did he "by a special requested instruction, call the trial court's attention to [the] omission" as is required by Art. 36.15, V.A.C.C.P. It is therefore appropriate to view the charge as a whole in order to determine whether fundamental error is presented. *Slagle v. State,* 570 S.W.2d 916 (Tex.Cr.App.1978).

■ Upon considering the court's instruction as a whole we find no diminution of the state's burden of proof, nor an authorization for conviction for conduct not constituting a criminal offense, nor any failure to give the appellant adequate notice of the conduct for which he was convicted. See *Robinson v. State,* 596 S.W.2d 130 (Tex.Cr.App.1980). The omission did not constitute fundamental error.

For the reasons stated above, the judgment is reversed and the cause remanded.

MILLER, J., concurs in the result.

---

6. See *Lugo-Lugo v. State,* 650 S.W.2d 72 (Tex.Cr.App.1983).