NO. 07-05-0317-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 28, 2007
_____

JESSE R. GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400059; HONORABLE JIM BOB DARNELL, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant Jesse R. Garcia was convicted of failure to stop and render aid and sentenced to confinement in the Institutional Division of the Texas Department of Corrections for two years and six months. Through four issues he contends the trial court erred by (1) admitting his oral statement made without *Miranda* warnings, and (2) made without the warnings required by Texas statute; (3) submitting a charge containing improper conduct elements; and (4) submitting a charge that did not distinctly set forth the law applicable to the case. Finding appellant was not in custody for purposes of the

statutory and constitutional warnings, and was not egregiously harmed by any charge error, we affirm.

## Background

Pedestrian Earl Powell suffered severe injuries when stuck by a hit-and-run motorist in Slaton, Texas. Law enforcement personnel immediately began searching for the responsible party but were hindered by the absence of forensic evidence at the scene. Slaton police officer Billy Timms investigated leads which eventually led him to appellant's girlfriend, Janie Martinez. His communication with Ms. Martinez in turn led to appellant.

Timms contacted appellant at his workplace, Coronado High School in Lubbock. At this stage of the investigation, all suspects other than appellant had been cleared. Appellant agreed to speak with Timms and voluntarily accompanied him to the school cafeteria where Timms recorded their conversation. From background noises on the recording, it appears appellant and Timms were not alone in the school cafeteria during the interview.

The interview lasted something less than eighteen minutes. Appellant was not warned pursuant to *Miranda v. Arizona*[1] and the Code of Criminal Procedure[2] before or during the interview.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).

In the interview, Timms' initial questioning of appellant focused on the current location of appellant's vehicle from the perspective that Janie Martinez may have been the driver who struck Powell. Appellant did not initially disagree that Martinez was driving his vehicle on the night of the accident. Rather, appellant maintained at the time in question it was dark, Powell's injuries were the result of an accident, and appellant and Martinez would have stopped if appellant possessed liability insurance coverage.

Approximately eleven minutes into the interview, Timms bluntly told appellant that he needed to know who was the driver and passenger at the time of the accident. According to the officer, if appellant was a passenger he was a witness but if he was the driver, charges would be filed. He urged appellant to help himself and be honest in his responses. Appellant then stated the only reason "we didn't stop or I didn't stop. Well let me tell you I'm the one that was driving. And uh the only reason I didn't stop was because I didn't have no insurance. And they had suspended my license."

Timms responded, "I tell you what I'd like to do Jesse. I'd like to go back. If you don't mind, I'll take you back to Slaton with me. We'll sit down and do a statement and as soon as we get through with the statement I'll cut you loose, take you to the house and I'll take, put all this paperwork together, run it to the DA's office, and let them see what they want to do with it."

Appellant replied, nonresponsively, that his windshield broke because he washed his car and was operating the heater. Timms asked, "Did his face hit the car?" Appellant responded, "I don't remember nothing. I just remember the impact." Timms added, "This

3

isn't the first one of these I've ever worked."  Appellant then volunteered remorse at his failure to stop and reiterated that the only reason he failed to stop was his lack of liability insurance coverage.

Near the conclusion of the interview, when appellant asked to call his girlfriend, Timms responded, "Why don't you wait."  Appellant then called his employer telling him he had to leave work because something had come up and he would call him the following morning.

Later that day appellant gave a written statement preceded by *Miranda* warnings. Among other averments in the document, appellant stated, "I told [Officer Timms during their interview at appellant's workplace] I didn't know the address [where appellant left his vehicle] and he asked if I would take him to it.  I told him I would show him where it was parked."

Appellant was subsequently indicted and tried for failure to stop and render aid. Tex. Transp. Code Ann. § 550.021 (Vernon 1999).  A jury set punishment at two years, six months in the Institutional Division of the Texas Department of Criminal Justice.  Appellant timely appealed.

Discussion

Appellant presents four issues for review.   In his first and second issues, he contends the trial court erred by overruling his objection to the admission of his oral statement because he did not receive the warnings of *Miranda* and art. 38.22.  In his third

4

and fourth issues, appellant claims the court committed egregious error by submitting a charge instructing the jury of improper conduct issues.

## Issues One and Two: Admissibility of the Oral Statement

We review the trial court's admission of evidence under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). We must uphold the trial court's ruling if the admission of the evidence was within the zone of reasonable disagreement. *Id.* (*citing Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App. 1990, op. on reh'g)).

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

The *Miranda* warnings are codified in art. 38.22 § 2(a). *Jones v. State,* 944 S.W.2d 642, 650 n.11 (Tex.Crim.App. 1996). Article 38.22 sec. 3(a) provides that no oral statement made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless, among other things, prior to giving the statement, the accused received the statutory warnings of art. 38.22 sec. 2(a). *Miller v. State,* 196 S.W.3d 256, 264 (Tex.App.–Fort Worth 2006, pet. ref'd).

The requirement of *Miranda* that police advise a person of rights prior to questioning applies if the person is "in custody or otherwise deprived of his freedom of action in any

5

significant way." *Miranda*, 384 U.S. at 445; *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). The determination whether a person is in custody within the meaning of *Miranda* must be made on a case by case basis considering all the objective circumstances. *Stansbury*, 511 U.S. at 323; *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex.Crim.App. 1996). A person is in custody only if, under all the circumstances, a reasonable, innocent person would believe that his freedom of movement was restrained to the degree associated with an arrest. *See Dowthitt*, 931 S.W.2d at 255.

The State argues the evidence shows that appellant was not in custody when he gave his oral statement to officer Timms. We agree, and overrule appellant's first two issues.

Courts have held that, ordinarily, when a person voluntarily accompanies a law enforcement officer to a certain location, even though the person knows or should know that the officer suspects he or she may have committed or may be implicated in the commission of a crime, the person is not restrained or "in custody." *Miller*, 196 S.W.3d at 264 (*citing Livingston v. State,* 739 S.W.2d 311, 327 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1210, 101 L. Ed. 2d 895, 108 S. Ct. 2858 (1988)). When the circumstances reveal a person acts only on the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he or she will be taken forcibly, the accompaniment is voluntary, and the person is not in custody. *Shiflet v. State*, 732 S.W.2d 622, 628 (Tex.Crim.App. 1985); *see Anderson v. State,* 932 S.W.2d 502, 505 (Tex.Crim.App. 1996), *cert. denied,* 521 U.S. 1122, 138 L. Ed. 2d 1019, 117 S. Ct. 2517

(1997) (Fourth Amendment case).  However, an interrogation that begins as noncustodial may escalate into a custodial interrogation based on the conduct of law enforcement during the encounter.  *Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Crim.App. 1983).

The Court of Criminal Appeals has observed at least four general circumstances that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement is significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.  *Dowthitt,* 931 S.W.2d at 255.

In the first through third situations, the restriction on freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.*  Here, during the interview appellant was not subject to restriction of movement to the degree associated with an arrest.  Therefore, our discussion turns to the fourth situation addressed in *Dowthitt*, probable cause to arrest.

The officer's knowledge of probable cause must be manifested to the suspect, and such manifestation could occur if information sustaining the probable cause is related by the officer to the suspect or by the suspect to the officer. *Id.; see Ruth v. State*, 645 S.W.2d 432, 436 (Tex.Crim.App. 1979) (holding that a suspect's "statement that he had shot the victim immediately focused the investigation on him and furnished probable cause

7

to believe that he had committed an offense; after that time, the continued interrogation must be considered a custodial one").

However, the manifestation of probable cause does not automatically establish custody. Rather, custody attaches if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Dowthitt,* 931 S.W.2d at 255.

Situations where the manifestation of probable cause triggers custody are unusual. *State v. Stevenson,* 958 S.W.2d 824, 829 n.7 (Tex.Crim.App. 1997). Illustrative is *Dowthitt*, where probable cause gave rise to custody when the defendant made an incriminating statement after an hours-long interrogation session during which he experienced a substantial period without food, his complaints of exhaustion and requests to see his wife were ignored, and he was accompanied on restroom breaks by authorities. 931 S.W.2d at 257 and 252-254.

We do not find the unusual circumstances of *Dowthitt* present here. And even though during questioning a person may utter responses implicating himself or herself in an offense, this alone does not trigger custody. Thus, in *Scott v. State,* 165 S.W.3d 27 (Tex.App.–Austin 2005), *rev'd on other grounds*, 227 S.W.3d 670, No. PD-0862-05, 2007 Tex. Crim. App. LEXIS 697, at *54 (Tex.Crim.App. June 6, 2007) the accused gave a written statement after participating in approximately twenty hours of police questioning spread over five days without receiving a *Miranda* warning. 165 S.W.3d at 42. Relying on *Dowthitt*, the accused argued the trial court erred in denying his motion to suppress his

8

statement because probable cause arose the first day of questioning when he admitted involvement in the notorious Austin "yogurt shop murders." *Id.* Disagreeing, the appellate court noted no controlling authority for the proposition that lengthy questioning alone creates custody. *Id.* It then distinguished the interrogation facts of *Dowthitt,* discussed above*,* and those before it. In *Scott*, the accused received breaks, although cigarette breaks outside the building were escorted so that he could return to the secure questioning area, ample food and drink were provided, officers took him home at the end of each day's questioning, and although his home was clandestinely under surveillance, the court found this did not legally restrict his movement. 165 S.W.3d at 42 and 42 n.6, n.7. Upon these facts the court affirmed the trial court's findings that a reasonable person in the position of the accused would not believe his freedom of movement restrained to the degree associated with a formal arrest. *Id.* at 43.

In the matter at hand, as noted, appellant voluntarily accompanied Officer Timms to the school cafeteria for questioning early in the afternoon. Background sounds and voices on the interview recording indicate they were not alone. The interview lasted something less than eighteen minutes and for much of this time the discussion focused on appellant as a witness. Approximately twelve minutes into the interview, when appellant admitted he was the driver of the accident vehicle, Officer Timms responded by requesting appellant voluntarily ("if you don't mind") accompany him to the location of the accident vehicle and then to the station for a written statement ("I asked him if he would go to Slaton and give a written statement"). Officer Timms told appellant that after the statement he would "cut [appellant] loose," take him home, and once the paperwork was prepared, let

9

the district attorney's office "see what they want to do with it." While a custody determination is an objective assessment, *Stansbury* 511 U.S. at 323, it is nevertheless noteworthy that, before ruling on the admissibility of appellant's oral statement, the trial judge heard Officer Timms' testimony that appellant was at all times free to leave. The judge also had before him appellant's written statement, recounting both Officer Timms' request that appellant show him the location of the accident vehicle and appellant's voluntary assent. At the conclusion of the interview, in a telephone conversation with his employer, appellant reported he had to leave work for the day but would call the employer the following morning.

Based upon the totality of circumstances, we do not find that appellant was in custody for *Miranda* and art. 38.22 purposes at any time during his recorded interview with Officer Timms. Thus, the absence of statutory and constitutional warnings did not render appellant's oral statement inadmissible under either the Fifth Amendment to the United States Constitution and *Miranda*, or under art. 38.22. Accordingly, the trial court did not abuse its discretion in admitting appellant's oral statement.

Issues Three and Four: Charge Error

By his third and fourth issues appellant argues the definitions of the culpable mental states of "intentionally" and "knowingly" in the court's charge and the use of those terms in the application paragraph of the charge were erroneous, and harmed him. We disagree.

An appellate court's review of alleged error in a jury charge involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we must

10

determine whether error occurred. Second, if we find error, then we determine whether sufficient harm resulted from the error to require reversal. *Id.* at 731-32.

The relevant definitions and the application paragraph contained in the court's charge to the jury read as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.
>
> * * *
>
> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about April 10, 2002, in Lubbock County, Texas, as alleged in the indictment, the defendant, JESSE GARCIA, did intentionally or knowingly drive a vehicle which was then and there involved in an accident resulting in injury to Earl Powell, and did then and there intentionally or knowingly leave the scene of such accident knowing that said accident had occurred, without first giving his name and address to any person, and without rendering reasonable assistance to Earl Powell, then you will find the defendant guilty, and so say by your verdict.

(capitalization in original)

Section 550.021 of the Texas Transportation Code provides, in relevant part:

> (a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:
>
> > (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
> >
> > (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and
> >
> > (3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

11

* * *

(c) A person commits an offense if the person does not stop or does not comply with the requirements of this section.

Tex. Trans. Code Ann. § 550.021 (Vernon 1999).

It is apparent that § 550.021 does not specify the requisite culpable mental state for actionable conduct nor does it "plainly dispense" with proof of mental culpability. Under such circumstances, the Penal Code supplies the culpable mental state which the State must prove. Tex. Penal Code Ann. § 6.02 (b), (c).

Appellant cites *St. Clair v. State,* 26 S.W.3d 89, 98 (Tex. App.–Waco 2000, pet. ref'd) and *Morales v. State*, 673 S.W.2d 697, 699 (Tex.App.–Corpus Christi 1984, no pet.) for the proposition that "[f]ailure to stop and render aid is a circumstances-surrounding-conduct offense." From that premise, he argues that the charge's definitions of the terms intentionally and knowingly were overly broad and erroneous because they defined those terms with respect to the nature of conduct and the result of conduct in addition to the knowledge of circumstances surrounding the conduct. *See Cook v. State,* 885 S.W.2d 485, 491 (Tex.Crim.App. 1994). The discussions of culpable mental state in *St. Clair*, 26 S.W.3d at 98, and *Morales*, 673 S.W.2d at 699, begin with *Goss v. State,* 582 S.W.2d 782 (Tex.Crim.App. 1979). In *Goss*, the court considered a challenge to an indictment that alleged the defendant intentionally and knowingly operated a vehicle that was involved in a collision, but did not allege the defendant knew the accident had occurred. *Id*. at 783, 785. The court held knowledge an accident had occurred is an element of the offense of

12

failure to stop and render aid, contrasting the treatment of the knowledge element under the revised penal code with prior law that treated the defendant's lack of knowledge as a defensive matter. *Id*. at 785. The court concluded that the culpable mental state required for the offense "is that the accused had knowledge of the circumstances surrounding his conduct (V.T.C.A., Penal Code Sec. 6.03(b)), *i.e.*, had knowledge that an accident had occurred." *Id.; accord, Baker v. State,* 974 S.W.2d 750 (Tex. App.–San Antonio 1998, pet. ref'd) (*Goss* analysis applies to offense as codified in §§ 550.021 and 550.023, Texas Transportation Code). While *Goss* and cases following it clearly require that the State prove the defendant had knowledge of the circumstances, that is, knowledge an accident had occurred, we do not read such cases to hold that the only culpable mental state applicable to the offense proscribed by § 550.021 is the knowledge of circumstances surrounding the conduct.

Many cases, including *Morales*, 673 S.W.2d at 698, list the elements of the offense to include the driver's intentional and knowing failure to stop and take the statutorily required actions. *See, e.g.*, *Steen v. State,* 640 S.W.2d 912, 915 (Tex.Crim.App. 1982); *Allen v. State*, 971 S.W.2d 715, 717 (Tex.App.–Houston [14th Dist.] 1998 no pet.); *Sheridan v. State*, 950 S.W.2d 755, 759 (Tex.App.–Fort Worth 1997, no pet.). Such elements focus not on knowledge of circumstances but on the nature of the defendant's conduct. *Cf. Sheridan*, 950 S.W.2d at 759 (noting that "gravamen of the offense relates to the actor's failure to stop and render reasonable assistance"). Considering *Goss* and the cases following it in light of *Steen* and the other cases containing that listing of the elements, we

conclude that § 550.021 encompasses elements that relate to both the circumstances surrounding conduct and the nature of conduct.

Appellant's indictment included the allegations that he intentionally and knowingly drove the vehicle involved in the accident, and that he intentionally and knowingly left the scene of the accident, knowing that the accident had occurred. We find the trial court did not err by defining, in its charge, intentional and knowing conduct with reference to the nature of appellant's conduct.

We agree with appellant, however, that the charge's definition of intentional conduct should not have contained the reference to a result of his conduct. *See Garza v. State*, 794 S.W.2d 497, 500-01 (Tex.App.–Corpus Christi 1992, pet. ref'd) (charge should contain only that portion of the statutory definition which corresponds to the culpable mental state proscribed by the offense). We next consider whether the error resulted in actual, as opposed to theoretical, harm to appellant. *Patrick v. State,* 906 S.W.2d 481, 492 (Tex.Crim.App. 1995).

Appellant did not raise the objections to the charge in the trial court that he now urges. When an appellant fails to preserve charge error through a timely and proper objection, then the appellate court must decide whether the error was so egregious that the appellant did not receive a fair and impartial trial. *Almanza,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1985); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State,* 218

S.W.3d 706, 719 (Tex.Crim.App. 2007). Our review for egregious harm requires consideration of the entire jury charge, the evidence including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* Review of those factors does not reveal that appellant suffered egregious harm from the inclusion of the reference to result of conduct in the charge's definition of the term intentionally.

We overrule appellant's third and fourth issues.

Conclusion

Having overruled appellant's four issues, we affirm the judgment of the trial court.


James T. Campbell
Justice



Publish.