

# NUMBER 13-18-00260-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **AARON QUINTANILLA RAMIREZ,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Aaron Quintanilla Ramirez was convicted of possession of a controlled substance in an amount between one and four grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c). By two issues, appellant argues that the trial court erred when it denied his motion to suppress. Specifically, he argues the trial court should have suppressed: (1) the statements he made to police indicating where drugs

were located, because he was in custody and not Mirandized and because the statements were involuntary; and (2) the drugs recovered as a result of his statements. We affirm as modified.

## I.  BACKGROUND

In July 2017, appellant was indicted for possession of between four and two hundred grams of cocaine with intent to deliver, a first-degree felony. *See id.* §§ 481.102(3)(D), 481.112(a). The indictment alleged that appellant committed the offense within a school zone. *See id.* § 481.134. Appellant moved to suppress statements he made to police before his arrest and the evidence seized in connection with his statements.

At the hearing on appellant's motion, the trial court heard testimony from Randy Ybarra, an investigator with the McAllen Police Department. Ybarra explained the Special Investigative Unit received numerous calls from appellant's neighbors informing them that narcotics were being sold and distributed out of appellant's home. As a result, Ybarra sent a confidential informant to purchase narcotics from the home while he monitored the transaction from about twenty feet down the street. The confidential informant walked up to the house and purchased cocaine. Ybarra then drove to the police department and prepared a probable cause affidavit for a warrant to search appellant's home for narcotics. After Ybarra had the warrant signed by a judge but before he could execute it, investigators surveilling appellant's home informed Ybarra that appellant had left his home in his vehicle. Ybarra radioed Officer Herbert Castellano and instructed him to stop appellant, detain him, and transport him back to the house.

Castellano also testified at the suppression hearing; he explained he pulled appellant over without observing a traffic violation. Castellano then informed appellant of

the investigation and that a search warrant was being executed at his home.[1]  Castellano asked appellant if he would accompany him back to the house, and appellant voluntarily agreed.  Castellano testified that appellant was free to leave and not under arrest and that appellant's car was left on the side of the road.  Consistent with department policy when transporting an individual in a police car, Castellano placed handcuffs on appellant and placed him in the back of his patrol unit during the drive back to appellant's home.  Once they were in the front lawn of appellant's home, the handcuffs were removed, and Ybarra approached appellant.

Ybarra testified that appellant was not under arrest at this point and that he did not read him his *Miranda* warnings.[2]  Ybarra explained that he asked appellant for his cooperation in finding the narcotics.  When asking for appellant's cooperation, Ybarra pointed out to appellant that the investigation's focus could expand to include appellant's daughter, because she ran into the home after appellant left and that, as a result, Child Protective Services could also potentially become involved.[3]  Appellant agreed to cooperate.  Ybarra and appellant went inside the home, and appellant indicated to Ybarra how to retrieve the drugs from the shower drain in one of the bathrooms.  Ybarra located thirty-two grams of cocaine and an unspecified amount of synthetic marijuana.  At no point during their interaction did Ybarra or Castellano tell appellant he was not free to leave, that he was free to leave, or that he was under arrest.  Appellant did not testify at the suppression hearing, and the trial court denied the motion.

---

[1] According to the record, appellant is a former police officer.

[2] *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966).

[3] The age of appellant's daughter is unclear from the record.

Following the denial of appellant's motion to suppress, the trial court issued findings of fact and conclusions of law.[4] In sum, the trial court found that appellant was not in custody before his interaction with Ybarra and that appellant voluntarily told Ybarra where the narcotics were located. Subsequently, appellant entered into a plea agreement with the State for a lesser-included offense, signed a judicial confession, and stipulated to the evidence. The trial court accepted the plea deal, found appellant guilty of the second-degree felony offense for manufacture or delivery of a substance in penalty group 1, sentenced him to a probated sentence of six years in the Texas Department of Criminal Justice—Institutional Division, and assessed a $1,000 fine. *See id.* §§ 481.102(3)(D), 481.112(c). This appeal followed.

## II.  DISCUSSION

By his first issue, appellant argues the trial court erred when it denied his motion to suppress the statements he made to Ybarra because (1) he made the statements made while he was in police custody and without receiving his *Miranda* warnings, and (2) the statements were coerced.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial judge's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). The trial judge is the sole judge of witness

---

[4] The trial court issued supplemental findings of fact and conclusions of law after this Court abated the appeal.

4

credibility and the weight to be given to witness testimony. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). Second, we review de novo the trial court's application of the law to the facts. *Valtierra*, 310 S.W.3d at 447.

"As a general rule, appellate courts view the evidence in the light most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion." *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). "Thus, courts afford the prevailing party 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

## B. Applicable Law

There are three types of interactions among police officers and citizens: (1) consensual encounters, (2) investigative detentions, and (3) arrests or their custodial equivalent. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). "An encounter is a consensual interaction which the citizen is free to terminate at any time." *Crain*, 315 S.W.3d at 49. "On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id.* "When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required." *Id.* "The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter." *Id.*

Both a detention and an arrest involve a restraint on one's freedom of movement; the difference is in degree. *State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App.

5

2008); *State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.). An arrest is a comparatively greater degree of restraint on an individual's freedom of movement than is an investigative detention. *Sheppard*, 271 S.W.3d at 290. The test for whether a person has been arrested is whether the facts demonstrate the individual's liberty of movement was actually restricted or restrained. TEX. CODE CRIM. PROC. ANN. art. 15.22; *Amores v. State*, 816 S.W.2d 407, 411–12 (Tex. Crim. App. 1991).

A defendant seeking the suppression of a statement on *Miranda* grounds has the threshold burden of clearly establishing that his statements were given during custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). A person is "in custody" for *Miranda* purposes when there is either (1) a formal arrest or (2) a restraint on the person's freedom of movement to the degree an objectively reasonable person would otherwise associate with a formal arrest. *Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009); *see Miranda v. Arizona*, 384 U.S. 463, 444 (1966); *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013); *Koch v. State*, 484 S.W.3d 482, 491 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

> Although there is no "bright-line" rule to distinguish the two, . . . Texas cases are generally categorized as an "arrest" or "detention" depending upon several factors, including the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and any other relevant factors.

*Sheppard*, 271 S.W.3d at 291; *see Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Ortiz v. State*, 421 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

The Texas Court of Criminal Appeals has outlined at least four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom

6

of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 255. We make the determination of when an investigatory detention escalates into full custody on an ad-hoc basis, taking into account the totality of the circumstances. *See Saenz*, 411 S.W.3d at 496–97. In the first through third situations, the restriction on freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255*.* The fourth situation requires that an officer's knowledge of probable cause be manifested to the suspect. *Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt*, 931 S.W.2d at 255). "[T]he mere fact than an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255 (citing *Usser v. State*, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983)).

## C. Analysis

Here, appellant argues that the underlying facts trigger the first, third, and fourth scenarios outlined by the court of criminal appeals as constituting custody. *See id.*

First, appellant argues that his freedom of movement was restricted to a degree associated with an arrest because Officer Castellano handcuffed appellant and transported him in the backseat of a police unit to appellant's home. We disagree. If a person voluntarily agrees to accompany police officers to a different location to answer questions, the police officers advise the person that he will be handcuffed for officer safety

7

during transport, and the handcuffs are removed upon arrival at the second location, then these facts alone do not invoke custody. *Martinez-Hernandez v. State*, 468 S.W.3d 748, 758 (Tex. App.—San Antonio 2015, no pet.); *Turner v. State*, 252 S.W.3d 571, 579–80 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Considering the totality of the circumstances, we conclude handcuffing appellant based on customary safety concerns, and only for the duration of the transport in a car lacking a safety cage, does not show custodial status"); *see Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex. Crim. App. 1987) (concluding that, even though defendant was handcuffed for officer-safety reasons before he was placed in the backseat of an unmarked vehicle, the defendant had already consented to voluntarily accompany the officers to the station; therefore, the defendant was not in custody when he gave his statement to the officers)). But if after transport, the person continues to be physically restrained and a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest, then he is in custody. *Martinez-Hernandez*, 468 S.W.3d at 758. "When a person voluntarily accompanies officers to an interview, and he knows or should know that the police suspect he may be implicated in the crime under investigation, he is not 'restrained of his freedom of movement' and is not in custody." *State v. Vasquez*, 305 S.W.3d 289, 294 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd).

Here, the trial court found that appellant voluntarily agreed to accompany Castellano back to the residence and was transported in handcuffs in the back of the police unit because of department policy and for officer safety. The trial court also found that the physical restraint on appellant did not continue after he arrived at his home—the handcuffs were removed, and appellant was allowed to stand on the lawn and talk with Ybarra, but he was not allowed to enter the residence. These findings by the trial court

8

are supported by the record, and we defer to them. *See Valtierra*, 310 S.W.3d at 447. Thus, the evidence supports a conclusion that appellant was not in custody during the transportation to his home. *See Sheppard*, 271 S.W.3d at 283 ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'"); *Crain*, 315 S.W.3d at 49; *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997) ("[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety"); *Dancy*, 728 S.W.2d at 778–79; *Koch*, 484 S.W.3d at 490; *Martinez-Hernandez*, 468 S.W.3d at 758; *In re D.J.C.*, 312 S.W.3d 704, 713 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("When the circumstances show that the individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody at that time.").

We also note that Castellano took and retained the keys to appellant's vehicle after appellant agreed to accompany Castellano back to his home. Although this is an additional restraint on appellant's freedom of movement, it is generally not enough to escalate a detention into an arrest. *See, e.g.*, *Whittington*, 401 S.W.3d at 275 (concluding trial court erred when it found defendant was arrested after officer took her keys, moved his police vehicle, and conducted an investigation regarding a collision between defendant's car and a third party); *Campbell v. State*, 325 S.W.3d 223, 235 (Tex. App.—Fort Worth 2010, no pet.) (concluding defendant was not in custody when, after he was found passed out inside his car, an officer took his car keys and asked him questions as part of a continuing investigation); *Horton v. State*, 16 S.W.3d 848, 852 (Tex. App.—Austin 2000, no pet.) (concluding defendant was detained for investigation when officers took his keys, ordered him out of his car, and prevented him from reentering the car); *see*

9

*also White v. State*, No. 08-06-00050-CR, 2007 WL 853134, at *1, 4 (Tex. App.—El Paso Mar. 22, 2007, no pet.) (concluding defendant was not in custody when officer took his keys; rather, he was still being detained because the officer's suspicion that appellant was intoxicated had not been dispelled or confirmed).  We conclude that Castellano's retention of appellant's car keys while transporting appellant voluntarily to his house for investigatory purposes did not escalate his transportation into a custody scenario.

Appellant also argues that, once at his home, his freedom of movement was restricted to a degree associated with an arrest, triggering the first and third scenarios in *Dowthitt*.  *See Dowthitt*, 931 S.W.2d at 255.  Appellant argues that he "was met with at least three uniformed officers outside his home, six uniformed officers and a canine inside and searching his home while he [was] made to stay outside in the driveway."  However, the trial court's supplemental findings of fact state that "Ybarra was the only officer outside the home in contact with [appellant]; the other officers conducting the search remained within the home, and the 'two or three' uniformed officers outside the home did not have contact with [appellant]."  These findings by the trial court are supported by the record, and we defer to them.  *See Valtierra*, 310 S.W.3d at 447.  Thus, appellant was only in contact with Ybarra while he was outside his home and without handcuffs.  Also, there is nothing in the record indicating any police control over appellant once he arrived at his home and the handcuffs were removed—appellant was not told he was not free to leave and law enforcement did not deny him any request for a bathroom break or to speak to his family.  *Cf. Dowthitt*, 931 S.W.2d at 257.  The trial court further found that "nothing in the record indicates that any officer brandished a weapon at appellant or any other person."  *See Whittington*, 401 S.W.3d at 273.

Furthermore, the trial court found that the length of the investigation at his home—i.e., the questioning of appellant—"extended considerably less than one hour . . . ." The length of this interrogation also supports a conclusion that appellant was not in custody. *See United States v. Sharpe*, 470 U.S. 675, 678–79, 687–88 (1985) (rejecting the notion that twenty-minute detention is unreasonable when the investigation was done in "a diligent and reasonable manner"); *California v. Beheler*, 463 U.S. 1121, 1122–23 (1983) (concluding suspect was not in custody when he voluntarily accompanied the police to the station, talked for less than thirty minutes, and was permitted to return home); *Dancy*, 728 S.W.2d at 775 (concluding that suspect was not in custody when he voluntarily accompanied officers to the police station, answered questions posed by law enforcement officials, gave hair samples, and the interview lasted about thirty-eight minutes); *State v. Ortiz*, 382 S.W.3d 367, 374 n.30 (Tex. Crim. App. 2012) (mentioning duration of investigatory detention among the "accretion of objective circumstances" equating to custody under *Miranda*); *Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (concluding suspect was not in custody when he came to station voluntarily at time of his own choosing, was allowed to step outside building and go unaccompanied to his car during interviews, and "a few hours" later was allowed to leave unhindered after statements were completed); *State v. Rodriguez,* 986 S.W.2d 326, 330 (Tex. App.—El Paso 1999, pet. ref'd) (determining appellant not in custody although interrogation lasted several hours); *cf. Dowthitt*, 931 S.W.2d at 256 (concluding defendant was in custody after, among other factors, approximately six hours of interrogation).

Viewing the totality of the circumstances objectively, we conclude that a reasonable person would not believe his freedom was restrained to the degree of formal arrest and reject appellant's argument that the first and third *Dowthitt* scenarios were

triggered. *See Ortiz*, 382 S.W.3d at 372; *Dowthitt*, 931 S.W.2d at 255. Here, the degree of incapacitation does not appear more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, which suggests the appellant was, if anything, detained and not in custody. *See Sheppard*, 271 S.W.3d at 291; *Ortiz*, 421 S.W.3d at 891.

The fourth *Dowthitt* scenario is triggered when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave. *Dowthitt*, 931 S.W.2d at 255. The officer's knowledge of probable cause must be manifested to the suspect, and such manifestation could occur "if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Dowthitt*, 931 S.W.2d at 255; *Garcia v. State*, 237 S.W.3d 833, 837 (Tex. App.—Amarillo 2007, no pet.); *see Ruth v. State*, 645 S.W.2d 432, 436 (Tex. Crim. App. [Panel Op.] 1979). However, the manifestation of probable cause does not automatically establish custody. *Garcia*, 237 S.W.3d at 837; *see Saenz*, 411 S.W.3d at 496. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue." *Saenz*, 411 S.W.3d at 497 (citing *Stansbury v. California*, 511 U.S. 318, 325 (1994)). Rather, custody attaches if the manifestation of probable cause, combined with other circumstances of the interview, such as duration or factors of the exercise of police control over a suspect, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255; *Garcia*, 237 S.W.3d at 837. Additionally, situations where the mere manifestation of probable cause triggers custody are unusual. *State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1987); *Hodson v. State*, 350 S.W.3d 169, 174–75 (Tex. App.—San Antonio 2011, pet. ref'd); *Garcia*, 237 S.W.3d at

12

837. Illustrative is *Dowthitt*, where probable cause gave rise to custody when the defendant made an incriminating statement after an hours-long interrogation session during which he experienced a substantial period without food, his complaints of exhaustion and requests to see his wife were ignored, and he was accompanied on restroom breaks by authorities. *See Dowthitt*, 931 S.W.2d at 252–54, 257; *see also State v. Frazier*, No. 01-17-00160-CR, 2018 WL 1597648, at *6–7 (Tex. App.—Houston [1st Dist.] Apr. 3, 2018, no pet.) (mem. op., not designated for publication).

"[T]he question turns on whether, under the facts and circumstances of the case, 'a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.'" *Ervin*, 333 S.W.3d at 205 (quoting *Nguyen*, 292 S.W.3d at 678). The reasonable person standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254. The subjective intent of law enforcement officials to arrest is irrelevant, unless that intent is somehow communicated or otherwise manifested to the suspect. *Ortiz*, 382 S.W.3d at 372–73; *Dowthitt*, 931 S.W.2d at 254.

Here, the trial court found that, once at his home, Ybarra informed appellant of law enforcement's suspicion that illicit drugs were being kept within the home. Ybarra also did not tell appellant he was free to leave or that he was not free to leave. *See Dowthitt*, 931 S.W.2d at 255. However, the trial court found that Ybarra did not manifest his suspicion as to appellant specifically or any other possible occupant of the house; rather, Ybarra simply communicated a suspicion that illicit drugs were being kept within the home. Nevertheless, the brevity of the questioning conducted by Ybarra, combined with the other surrounding circumstances, show that appellant was at the residence voluntarily and not restrained in a way typically associated with an arrest. *See Hodson*, 350 S.W.3d at 174–75 (concluding defendant was not in custody during sixty-minute interview during

13

which defendant admitted involvement in murder); *Garcia v. State*, 106 S.W.3d 854, 858–59 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (concluding reasonable person in Garcia's situation would not have believed he was in custody because, although there was probable cause to arrest Garcia, he voluntarily went to police station, was told that he could leave, statement took thirty minutes, only two unarmed officers were with him, and he was in a visitor's room with his girlfriend); *Scott v. State*, 165 S.W.3d 27, 42 (Tex. App.—Austin 2005), *rev'd on other grounds*, 227 S.W.3d 670 (Tex. Crim. App. 2007) ("Although probable cause to arrest arose early in the questioning, the officers never suggested by word or deed that Scott was not free to leave."). As previously concluded, the evidence and trial court's findings of fact regarding the surrounding circumstances support a conclusion that a reasonable person would not believe he was restrained to a degree associated with an arrest. Accordingly, we reject appellant's argument that the fourth scenario in *Dowthitt* was triggered.

Here, appellant was informed of a search warrant being executed at his home, and appellant voluntarily agreed to accompany Castellano back to his house. Appellant was handcuffed for officer safety and due to law enforcement protocols, but the handcuffs were removed when they arrived at his property. The questioning of appellant by Ybarra was brief and done for investigatory purposes, and the police investigation was short and effective. While there were multiple officers searching the inside of the house, appellant was not in contact with them, and the force exerted by police was minimal. And while appellant was not told he was free to leave, he was also not told he was not free to leave. Appellant then told Ybarra where the drugs were located and went inside the house with Ybarra and instructed Ybarra how to retrieve them. Considering the totality of the circumstances, we conclude the degree of restraint does not "appear [to be] more than

14

necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation." *Sheppard*, 271 S.W.3d at 291; *see Whittington*, 401 S.W.3d at 273–75. Therefore, we conclude the trial court did not err when it denied appellant's motion to suppress because appellant was not in custody.

Finally, appellant argues that his statements to Ybarra were the result of coercion and, thus, involuntary. "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.21; *see Carter v. State*, 309 S.W.3d 31, 41 (Tex. Crim. App. 2010). The fruits resulting from a defendant's statement obtained through actual coercion must be suppressed. *See Michigan v. Tucker*, 417 U.S. 433, 448–49 (1974); *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997). "The United States Supreme Court has held that the determination as to whether a confession was voluntarily rendered must be analyzed by examining the totality of the circumstances." *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) (citing *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991)).

"In reviewing an allegation of coercive police conduct to determine whether a defendant's will was overborne such that his statement was involuntary, we consider factors such as 'length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer of family, and physical brutality." *Martinez-Hernandez*, 468 S.W.3d at 762–63 (citing *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 264 n. 18 (Tex. Crim. App. 1998)).

Appellant argues that he encountered numerous officers when he arrived at his house, and that this indicates that a coercive atmosphere existed during his interaction

15

with Ybarra; however, as noted previously, the trial court found that appellant only interacted with Ybarra once at the house and encountered "two or three" additional uniformed officers with whom he did not interact. Appellant also argues that Ybarra threatened him when he informed appellant that the investigation's focus could expand to include appellant's daughter and that Child Protective Services could get involved. This statement made by Ybarra, however, does not constitute coercion. *See Barker*, 956 S.W.2d at 23 (citing *Michigan v. Tucker*, 417 U.S. 433 446–449 (1974)) (noting that classical examples of coercion "ranged from torture, to prolonged isolation from family or friends in a hostile setting, to a seemingly endless interrogation designed to exhaust the accused"); *Martinez-Hernandez*, 468 S.W.3d at 762–63. Again, appellant was detained for a short period of time, the questioning by Ybarra was brief, there was no denial of a request to speak with family or to telephone a lawyer, and no physical brutality occurred. *See Martinez-Hernandez*, 468 S.W.3d at 762–63. The trial court's findings that (1) appellant voluntarily told Ybarra where and how to retrieve the narcotics and that (2) Ybarra did not use any coercion or threats are reasonably supported by the record. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Accordingly, we reject appellant's argument that the trial court erred in denying his motion to suppress because the statements he gave were involuntary.

We overrule appellant's first issue.[5]

### III.    MODIFICATION OF JUDGMENT

Appellant was originally indicted for the first-degree felony of possession of cocaine, a substance in penalty group 1, in an amount between four and two hundred

---

[5] Because we find appellant's first issue dispositive, we need not address his second issue. *See* TEX. R. APP. P. 47.1.

16

grams with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). The plea agreement and the hearing on the agreement make it clear that appellant pleaded guilty to and was convicted of the second-degree felony that is a lesser included offense of the offense alleged in the indictment. *See id.* § 481.112(c). However, the judgment lists the statute of offense as Texas Health and Safety Code § 481.1121(B)(2), which provides the second-degree felony offense for substances in penalty group 1a. *See id.* § 481.1121(B)(2). The Texas Rules of Appellate Procedure allow this Court to modify judgments sua sponte to correct typographical errors and make the record speak the truth. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi–Edinburg 1982, pet. ref'd). We modify the judgment to reflect that the statute of the offense appellant was convicted of is § 481.112(c) of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c).

## IV. CONCLUSION

We affirm the trial court's judgment as modified.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of June, 2019.

17