NO. 07-08-0381-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 23, 2009

______________________________


JOEY DALE STONE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 4179; HONORABLE STEVEN R. EMMERT, JUDGE

_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


          Appellant, Joey Dale Stone, was convicted by a jury of engaging in organized
criminal activity,


 sentenced to thirteen years confinement, and fined $5,000. Appellant
asserts the trial court erred by (1) denying his motion to suppress his confession and (2)
denying his motion for a directed verdict. We affirm.
Background
          In the summer of 2004, Wheeler County Deputy Sheriff Julian Torres had been
investigating a crime ring involved in the manufacture of methamphetamine in Wheeler
County for approximately six months. On July 29th of that year, Deputy Torres followed a
pickup driven by Shawn Ray Hernandez to an isolated farmhouse. The pickup was
missing its tailgate and he observed a large gray clothing bag with a paisley print in the
truck bed. When the pickup pulled into the farmhouse, he waited outside the property. 
After the pickup departed, he made a traffic stop. During the traffic stop, he observed that
the bag was no longer in the truck bed. Deputy Torres searched the pickup but found
nothing. He wrote a warning and departed.
          During the first week of August, Officer Kenneth Arant stopped the same pickup, this
time being driven by Shirley Jones. When Deputy Torres arrived, he observed the same
gray, paisley bag in the truck bed that he had previously observed when Hernandez was
driving. A search of the bag revealed that it contained chemicals used to manufacture
methamphetamine. Jones and her passenger, Margaret Hall, were arrested for possession
of methamphetamine and possession of chemicals used to manufacture the drug. 
 
          On August 11, 2004, Deputy Torres was patrolling in the vicinity of Appellant’s
residence when he detected a strong odor of ether. This was significant to him because
ether is used in the process of manufacturing methamphetamine. He left the area and
contacted other officers for backup. 
          After backup arrived, Deputy Torres and another officer approached the front door
of Appellant’s residence and knocked. Hernandez answered the knock. Appellant was
observed in the house but did not come to the door. Deputy Torres informed Hernandez
and Appellant of his suspicions and asked Hernandez to come outside to talk.
          After speaking with Hernandez, Deputy Torres returned to speak with Appellant and
he was allowed inside the residence. Deputy Torres asked Appellant “what was going on
about what they were doing there.” Appellant responded that they were “gassing off a
cook”


 and that they had seen the officers on video monitors,


 became nervous, and
flushed the ingredients down the toilet. Although the officers smelled ether in the house,
a search of the residence


 revealed no incriminating evidence. During the search, the
officers did observe surveillance equipment inside, and outside, the house as well as a
police scanner. Without making an arrest, the officers departed.
 
          On August 26, Deputy Torres made two traffic stops of separate vehicles being
driven by Jimmie Don Westbrook and David Bias, respectively. During the stop, Jimmie
Don appeared nervous and had no viable explanation for being where he was that night. 
Jimmie Don consented to a search of his pickup and Deputy Torres found a glass jar and
some coffee filters. These items were significant to him because they too were commonly
used in the manufacture of methamphetamine. Bias also consented to the search of his
pickup, however, Deputy Torres found nothing of interest. Afterwards, Deputy Torres
drove down the dirt road from which they had approached and located a roadside area
where he found a can of ether that had been pressed into the ground by a shoe and a
small green bag with a glass container inside containing what he believed was drain
cleaner. 
          Deputy Torres next received information that a methamphetamine “cook” was going
to occur around midnight, September 2. That night, Chief Joe Daniels stopped
Hernandez’s pickup for a speeding violation. Deputy Torres assisted. The occupants,
Hernandez, Jimmie Don and his wife, Bobbie Westbrook, appeared nervous and gave
inconsistent stories regarding their whereabouts prior to the stop. After obtaining consent
to search, the officers


 searched the pickup and detected a strong odor of ammonia. This
was significant to Deputy Torres because he suspected that the pickup’s occupants were
involved in stealing anhydrous ammonia in preparation for the “cook” that night. He also
found a pair of leather gloves that smelled strongly of ammonia. This was significant
because gloves are often used to protect the skin from burns when handling ammonia. 
Deputy Torres suspected that Hernandez, Jimmie Don, and Bobbie had stolen some
anhydrous ammonia and hidden the chemical nearby. As a part of his investigation,
Deputy Torres photographed their shoe soles and noticed that each pair of shoes had
distinctive prints. He also photographed a tire on the pickup because it had a distinctive
tread mark due to wear. 
          After searching accessible areas nearby where anhydrous ammonia was legally
stored, the officers located a storage area where they discovered a one gallon glass pickle
jar containing a small amount of liquid anhydrous ammonia. Deputy Torres photographed
a tire pattern at the location that was consistent with the tire pattern from a tire on
Hernandez’s pickup. He also photographed a heel print that was consistent with the tread
of Jimmie Don’s tennis shoe.


 
          Deputy Torres asked Jimmie Don and Bobbie to come to the police station to be
interviewed. They arrived, voluntarily gave their statements, and were placed under arrest. 
Jimmie Don and Bobbie described a number of locations where they manufactured
methamphetamine. Afterwards, officers verified the locations–the most significant of which
was a farm in Hemphill County where they found evidence of old generators, glass
containers with meth oil inside, hundreds of cans of ether, and old coolers. 
          On October 21, 2004, Appellant was indicted by a Wheeler County Grand Jury for
intending to establish, maintain, or participate in a combination of three or more persons,
to-wit: Jimmy Don Westbrook, Bobbie Westbrook, Shawn Ray Hernandez, Tina Marie
Williams, and David Wayne Bias, for the purpose of committing the first degree felony
offense of manufacture of a controlled substance, to-wit: methamphetamine, in an amount
of four grams or more but less than two hundred grams. See Tex. Penal Code Ann. §
71.02(a) (5) (Vernon Supp. 2008); Tex. Health & Safety Code Ann. § 481.112(d) (Vernon
2003). The offense was a felony of the first degree. See Tex. Penal Code Ann. § 71.02(b)
(Vernon Supp. 2008)
          On August 11, 2005, Appellant filed a motion to suppress his confession. At the
suppression hearing held October 11, 2007, Deputy Torres was the sole witness. At the
conclusion of the hearing, the court denied Appellant’s motion.
          Thereafter, a two-day trial was held on June 30 and July 1, 2008. In addition to the
testimony of Deputies Torres and Marshall, Jimmie Don and Bobbie Westbrook testified. 
Bobbie testified that Appellant was a friend who let them use his house to manufacture
drugs, went on “cooks” sometimes, and would melt down pills for them. She also testified
Appellant used his scanner and surveillance devices to keep track of police activity and
would call Hernandez to let them know the police were coming or where the police were
going to be. She testified that, on August 11, 2004, the day Deputy Torres searched
Appellant’s residence, Appellant was involved in the manufacture of methamphetamine 
and knew what was going on. He was responsible for surveillance and warned them to
leave when he observed the police outside the house. She also testified that, on
September 2, 2004, prior to the traffic stop, she had just picked up Hernandez and Jimmie
Don from Appellant’s residence. Their purpose for going there was to find out what
supplies they had in order to “cook” that night. 
          Thereafter, the jury found Appellant guilty of engaging in organized criminal activity. 
The Court then sentenced him to thirteen years confinement and a fine of $5,000. This
appeal followed.
Discussion
          Appellant first asserts the trial court should have granted his motion to suppress
because his incriminating statement was the result of a custodial interrogation in the
absence of warnings against self-incrimination. He next asserts Jimmie Don’s and
Bobbie’s testimony, as accomplice-witness testimony, was not sufficiently corroborated and
should not be considered to support his conviction.
          I.        Motion To Suppress
          Appellant asserts Deputy Torres should have informed Appellant of his right against
self-incrimination on August 11, prior to asking any questions, because Appellant was a
suspect in an ongoing investigation; the officers asked Hernandez outside for questioning
prior to questioning Appellant; and the officers did not tell Appellant he was free to leave. 
He contends that, under these circumstances, a reasonable person would believe his
freedom of movement had been significantly restricted citing Dowthitt v. State, 931 S.W.2d
244 (Tex.Crim.App. 1996). The State contends that, when Appellant was questioned, such
warnings were unnecessary because he was not in custody.
          A.       Standard of Review
          A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion; 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court’s decision, we do not
engage in our own factual review. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App.
1990); Best v. State, 118 S.W.3d 857, 861 (Tex.App.–Fort Worth 2003, no pet.). At a
suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given to their testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex.Crim.App. 2000). 
           Because a trial judge’s “custody” determination “presents a ‘mixed question of law and
fact;’” Herrera v. State, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007) (quoting Thompson v.
Keohane, 516 U.S. 99, 112-13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)), “we afford almost
total deference to a trial judge’s ‘custody’ determination when the questions of historical fact
turn on credibility and demeanor.” Id. at 526-27 (citing Ripkowski v. State, 61 S.W.3d 378,
381 (Tex.Crim.App. 2001)). However, we review de novo a trial court’s “custody”
determination if questions of historical fact do not turn on credibility and demeanor. Id. See
Johnson, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002). 
           B.        Appellant’s Incriminating Statement
           The safeguards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), come into play when a person in custody is subjected to either express questioning
or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64
L.Ed.2d 297 (1980). An incriminating statement may be deemed “involuntary” either
through a failure to comply with article 38.22 of the Texas Code of Criminal Procedure,
noncompliance with the dictates of Miranda, or failure to comply with due process or due
course of law because the statement was not freely given as a result of coercion, improper
influences, or incompetency. Wolfe v. State, 917 S.W.2d 270, 282 (Tex.Crim.App. 1996). 
“When a defendant alleges that the Miranda protections were thwarted, the burden of
showing admissibility rests on the prosecution.” Martinez v. State, 272 S.W.3d 615, 623-24
(Tex.Crim.App. 2008). 
           The determinative dispute here concerns whether Appellant was “in custody” when he
made the incriminating admission to Deputy Torres. “A person is in ‘custody’ only if, under the
circumstances, a reasonable person would believe that his freedom of movement was
restrained to the degree associated with a formal arrest.” Herrera, 241 S.W.3d at 525 (quoting
Dowthitt, 931 S.W.2d at 254). Moreover, our “custody” inquiry includes an examination of all
of the objective circumstances surrounding the questioning. Herring v. State, 147 S.W.3d
425, 430 (Tex.App.–Amarillo 2003), aff’d, 147 S.W.3d 390 (Tex.Crim.App. 2004).
           There are four general situations that may constitute custody: (1) when the suspect is
physically deprived of his freedom of action in any significant way, (2) when a law
enforcement officer tells the suspect that he cannot leave, (3) when the law enforcement
officers create a situation that would lead a reasonable person to believe his freedom of
movement is significantly restricted, and (4) when there is probable cause to arrest and law
enforcement officers do not tell the suspect that he is free to leave. Dowthitt, 931 S.W.2d at
254. Concerning the first through third situations, the restriction upon freedom of movement
must amount to the degree associated with an arrest as opposed to an investigative
detention. Id. Here, Deputy Torres’s uncontroverted testimony was that Appellant was not
placed under arrest before, or after, he was questioned. Therefore, the first through third
situations are not presented here. The question, then, is whether, during the encounter with
Appellant, probable cause to arrest him developed necessitating that the officers inform him 
he that was free to leave.
           Under the fourth situation, the officers’ knowledge of probable cause must be
manifested to the suspect; such manifestation could occur if information substantiating
probable cause is related by the officers to the suspect or by the suspect to the officers. 
Dowthitt, 931 S.W.2d at 255. This fourth situation, however, does not automatically establish
“custody.” Id. Rather, “custody” is established in the fourth situation if the manifestation of
probable cause, combined with other circumstances, would lead a reasonable person to
believe that he is under restraint to the degree associated with an arrest. Id. 
             “Situations where the manifestation of probable cause triggers custody are unusual.” 
Garcia v. State, 237 S.W.3d 833, 837 (Tex.App.–Amarillo 2007, no pet.) (citing State v.
Stevenson, 958 S.W.2d 824, 829 n.7 (Tex.Crim.App. 1997)). In Dowthitt, for instance, the
Court of Criminal Appeals held that “custody” began when Dowthitt admitted to his presence
during certain murders because “a reasonable person would have realized the incriminating
nature of the admission,” and other factors were present that “involv[ed] the exercise of police
control” over him. Id. at 257. These other factors included a lengthy interrogation lasting over
twelve hours from the time he first appeared at the police station to the time he made the
incriminating statement, police officers accompanied him to the restroom, and police officers
ignored his requests to see his wife. Id.
           Here, the officers were investigating an odor of ether emanating from Appellant’s 
residence. Deputy Torres questioned Appellant in his living room without objection. Once
Appellant volunteered the incriminating information, the officers ceased their questioning. 
Thereafter, the officers searched the residence and departed without taking anyone into
custody or placing anyone under arrest. That Appellant was a suspect in an ongoing
investigation alone does not equate to custody for purposes of determining whether a
statement is voluntarily given. Meek v. State, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990)
(citing Beckwith v. State, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976)). Furthermore,
there is no evidence that the officers threatened Appellant, made any promises of leniency,
restrained Appellant, handcuffed him, or placed him under arrest. 
          Carefully considering all of the circumstances surrounding Appellant’s questioning,
we hold that a reasonable person in Appellant’s situation would not have felt that his
freedom of movement was restrained to a degree associated with formal arrest. See
Garcia, 237 S.W.3d at 838. Because we hold that there was no custodial interrogation that
would require the officers to give Appellant warnings required by Miranda, supra, and
article 38.22 of the Texas Code of Criminal Procedure, we find the trial court did not abuse
its discretion by denying Appellant’s motion to suppress. Appellant’s first issue is
overruled.
          II.       Motion For Directed Verdict
          Appellant contends the trial court erred in not granting his motion for directed verdict
because the State’s evidence was insufficient to support his conviction without the
accomplice witness


 testimony of Jimmie Don and Bobbie Westbrook, and that testimony
was not sufficiently corroborated. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
2005). 
          In advancing his argument pertaining to insufficient corroboration, Appellant
presents a two-part challenge. First, he contends the State’s evidence was insufficient to
corroborate the accomplice witness testimony, even if his incriminating statement was
admissible. Secondly, he attempts to distinguish the facts of this case from other cases
holding that a defendant’s own incriminating statements can be used to corroborate the
testimony of an accomplice.



          A.       Standard of Review
          A complaint regarding a trial court’s failure to grant a motion for directed verdict is
a challenge to the legal sufficiency of the State’s evidence at trial; Canales v. State, 98
S.W.3d 690, 693 (Tex.Crim.App. 2003); Williams v. State, 937 S.W.2d 479, 482
(Tex.Crim.App. 1996), not the factual sufficiency. See Long v. State, 137 S.W.3d 726, 736
(Tex.App.–Waco 2004, pet. ref’d); Turner v. State, 101 S.W.3d 750, 761
(Tex.App.–Houston [1st Dist.] 2003, pet. ref’d); Isassi v. State, 91 S.W.3d 807, 809
(Tex.App.–El Paso 2002, pet. ref’d). 
          It is a fundamental rule of criminal law that one cannot be convicted of a crime
unless it is shown beyond a reasonable doubt that the defendant committed each element
of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03
(Vernon Supp. 2008); Tex. Penal Code Ann. § 2.01 (Vernon 2007). In a sufficiency of the
evidence review, the essential elements of the offense are those of a hypothetically correct
jury charge for the offense in question (i.e., one that accurately sets out the law and
adequately describes the offense for which the appellant was tried without increasing the
State’s burden of proof or restricting the State’s theory of criminal responsibility). Hooper
v. State, 214 S.W.3d 9, 14 (Tex. 2007); Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). 
          In assessing the legal sufficiency of the evidence to support a criminal conviction,
a reviewing court must consider all the evidence in the light most favorable to the verdict
and determine whether, based on that evidence and reasonable inferences to be drawn
therefrom, a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d
560 (1979); Hooper, 214 S.W.3d at 13. In our analysis, we must give deference to the
responsibility of the jury to fairly resolve conflicts in testimony, weigh the evidence, and
draw reasonable inferences form that evidence. Id. 
          Circumstantial evidence alone is sufficient to establish an element of the offense
and the sufficiency standard of review is the same for both direct and circumstantial
evidence cases. Hooper, 214 S.W.3d at 13. Each fact need not point directly and
independently to the guilt of the accused, so long as the cumulative force of the probative
evidence, when coupled with reasonable inferences drawn therefrom, is sufficient to
support the conviction. Evans v. State, 202 S.W.3d 158, 166 (Tex.Crim.App. 2006). 
          B.       Engaging In Organized Criminal Activity
          Texas Penal Code § 71.02 provides, in pertinent part, as follows:
A person commits an offense, if, with the intent to establish, maintain, or
participate in a combination or in the profits of a combination . . . he commits
or conspires to commit one or more [enumerated offenses including the
unlawful manufacture of a controlled substance or dangerous drug] . . . .
 
Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp. 2008). 
 
          To establish participation in a combination, the State must prove “that appellant
intended to ‘establish, maintain, or participate in’ a group of three or more, in which the
members intend to work together in a continuing course of criminal activities.” Nguyen v.
State, 1 S.W.3d 694, 697 (Tex.Crim.App. 1999). These activities need not, individually,
be criminal offenses. Id. See Tex. Penal Code Ann. § 71.01(a) (Vernon 2003). 
          However, before we compare the essential elements of this crime to the facts
adduced at trial while applying the applicable standard of review, we must first determine
whether the State offered sufficient non-accomplice evidence during trial to corroborate the
testimony of Jimmie Don and Bobbie. If so, then we will test the legal sufficiency of all the
evidence including Jimmie Don’s and Bobbie’s accomplice testimony. In making these
determinations, we consider the evidence adduced at trial by both the State and Appellant. 
See Cook v. State, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993).        
          C. Accomplice-Witness Rule & Legal Sufficiency
          Article 38.14 of the Texas Code of Criminal Procedure provides that a conviction
cannot stand on accomplice testimony unless there is evidence tending to connect the
defendant to the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). This rule
is a statutorily imposed review and is not derived from federal or state constitutional
principles that define legal and factual sufficiency standards. Brown v. State, 270 S.W.3d
564, 568 (Tex.Crim.App. 2008), cert. denied, 77 USLW 3595, __ U.S. __,129 S.Ct. 2075,
173 L.Ed.2d 1139 (2009). 
          When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine
the remaining portions of the record to see if there is any evidence that tends to connect
the accused with the commission of the crime. Castillo v. State, 221 S.W.3d 689, 691
(Tex.Crim.App. 2007) (citing Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App.
2001)). To meet the requirements of the rule, the corroborating evidence need not prove
the defendant’s guilt beyond a reasonable doubt by itself. Brown, 270 S.W.3d at 568;
Trevino v. State, 991 S.W.2d 849, 851 (Tex.Crim.App. 1999). Rather, viewing the
evidence in a light most favorable to the verdict; Brown, 270 S.W.3d at 568 (citing Gill v.
State, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994), the non-accomplice evidence must simply
link the accused in some way to the commission of the crime and show that “a rational
factfinder could conclude that the non-accomplice evidence ‘tends to connect’ appellant
to the offense.” Simmons v. State, 282 S.W.3d 504, 509 (Tex.Crim.App. 2009); Hernandez
v. State, 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997). The corroborating evidence need
not connect the defendant to every element of the crime. Vasquez v. State, 56 S.W.3d 46,
48 (Tex.Crim.App. 2001). There is no set amount of non-accomplice corroboration
evidence that is required for sufficiency purposes; “[e]ach case must be judged on its own
facts.” Gill v. State, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994).
          Moreover, circumstances that are apparently insignificant may constitute sufficient
evidence of corroboration. Trevino, 991 S.W.2d at 852. Although proof that the accused
was at or near the scene of the crime is insufficient to corroborate; Golden v. State, 851
S.W.2d 291, 294 (Tex.Crim.App. 1993), “when coupled with other suspicious
circumstances, [such evidence] may tend to connect the accused to the crime so as to
furnish sufficient corroboration to support a conviction.” Brown v. State, 672 S.W.2d 487,
489 (Tex.Crim.App. 1984). 
          The non-accomplice evidence at trial established that Appellant used
methamphetamine and bought drugs from Hernandez. He also knew Jimmie Don and
Bobbie. This evidence corroborates testimony by Jimmie Don and Bobbie that they knew
Appellant in connection with their drug-related activities. 
          The physical evidence obtained by Deputy Torres, on September 2, 2004,
connecting Hernandez with information that there was going to be a “cook” requiring the
theft of anhydrous ammonia corroborates Jimmie Don’s testimony that he “cooked” with
Hernandez and a “cook” was anticipated that night. The evidence also corroborates
Bobbie’s testimony that Hernandez was involved in the combination to manufacture
methamphetamine.
          Deputy Torres’s testimony that, on August 11, he detected a strong odor of ether
in, and around, Appellant’s house, coupled with his knowledge that ether was used in the
manufacture of methamphetamine, and the presence of Appellant and Hernandez at the
residence, corroborates Jimmie Don’s testimony that, prior to the arrival of the police, he
was at Appellant’s house “cooking” methamphetamine with Hernandez. This evidence
corroborates his testimony that he “cooked” at other locations belonging to Appellant. This
evidence also corroborates Bobbie’s testimony that Appellant permitted them to use his
house to manufacture methamphetamine, was aware they were “cooking” on August 11,
and participated in the “cook.” That he had a police scanner and surveillance cameras at
his house to monitor activity outside also corroborates Bobbie’s testimony that Appellant
used these devices to monitor police activities and call Hernandez with information. It also
corroborates her testimony that Appellant was responsible for surveillance on August 11
while they were “cooking” methamphetamine at his house and warned her of the police
officers’ arrival. Appellant’s statement corroborates the testimony of Jimmie Don and
Bobbie regarding the events of August 11 as well as testimony related to other participation
by Appellant in the combination to manufacture methamphetamine.
          Having reviewed the record in its entirety, we find the testimony of Deputies Torres
and Marshall, the physical evidence gathered during the investigation, Appellant’s disputed
statement to Deputy Torres, and his testimony at trial, provide sufficient non-accomplice
evidence to corroborate the testimony of the accomplice witnesses, Jimmie Don and
Bobbie Westbrook.
          Moreover, taking all the evidence together and considering Appellant’s statement
that he participated in the manufacture of methamphetamine with the members of the
combination,


 we find legally sufficient evidence from which a jury could reasonably infer
Appellant intended to participate in a combination by assisting in the manufacture of
methamphetamine with, at least, three members of the combination. 
          Contrary to Appellant’s assertion, Shaw v. State, 89 Tex.Crim. 205, 229 S.W. 509
(1921) and Kennedy v. State, 78 Tex.Crim. 24, 180 S.W. 238 (1915) do not require a
different result. Like Shaw, here, there is corroborating non-accomplice evidence other
than Appellant’s statement to lend corroboration to the accomplice testimony. 180 S.W.
at 512. Further, Kennedy stands for the proposition that, although accomplice testimony
and an incriminating statement , each apart and on their own, may be insufficient to sustain
a conviction, the two together may support one another in sustaining a conviction. 180
S.W. at 239. Appellant’s second issue is overruled. 
Conclusion
          The trial court’s judgment is affirmed.
 
                                                                          Patrick A. Pirtle 

                                                                                  Justice 

     

Do not publish.