**Affirmed in part, Reversed and Remanded in part, and Memorandum Opinion filed November 16, 2017.**



In the

# Fourteenth Court of Appeals

### NO. 14-16-00690-CR

### THE STATE OF TEXAS, Appellant

### v.

### ABEL DAN PEREZ, Appellee

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 13-DCR-063550**

## M E M O R A N D U M   O P I N I O N

The State appeals from the trial court's order granting appellee Abel Dan Perez's motion to suppress all evidence of appellee's statements and acts in response to questioning by law enforcement. The State contends the trial court erred by granting appellee's motion to suppress because appellee's statements were (1) voluntarily given, (2) not hearsay, and (3) not more prejudicial than probative. For the reasons stated below, we affirm in part and reverse and remand in part.

# I. BACKGROUND

Appellee's teenage niece reported to law enforcement that appellee sexually assaulted her when she was eight years old. After receiving this report, Detective Thompson located appellee at his mother's funeral. Thompson did not interview appellee at that time. Instead, Thompson obtained appellee's contact information and told appellee that he wanted to talk with him about a theft case. Approximately one week after the funeral, appellee called Thompson to set up a day and time to talk. On that day, appellee and his wife arrived at the Sherriff's office in their own vehicle. Thompson and his partner, Detective Escobedo, escorted appellee into an interview room at approximately 4:00 p.m., leaving appellee's wife in the lobby. For the next four hours, appellee answered questions regarding the alleged sexual assault of his niece. A video recording was made of appellee's interviews, which included a polygraph examination.

First, appellee was questioned by Thompson and Escobedo. At the beginning of the interview, appellee verbally affirmed the voluntary nature of his participation. Thompson asked appellee, "Are you here of your own free will today?" Appellee responded, "Yes, sir." Throughout the interview, Escobedo repeatedly assured appellee that he would not be arrested that day, and that he could return home at the conclusion of the questioning. At different points, Escobedo told appellee:

- You think that by you telling, saying, standing here telling us that yes, something happened between us, you think you gonna get arrested tonight. No, we're not gonna arrest you tonight. You get up—you get to get up and go home tonight.

- I'd rather you sit right there right now and tell us, hey, this is what really happened, this is how it happened. And we get done with what we need to know. You go home, and I promise you I ain't looking for you today or tomorrow or next week or the week after. I got too many other things to go do. . . . People come in here and think that we want to put people in jail and in prison and

this and this and that, No. We're here for just the facts only. Okay, it's not my job to put you behind bars.

- Like I said, tell us what really happened, you go home. . . . We're not gonna harass you. The DA's office will end up calling you and telling you what's going on.

- This is pretty much like a courtesy type thing now. We're giving you the opportunity to come in here and be 100% honest to help yourself out.

- I'm not gonna arrest you on a felony from ten years ago right now. I not gonna say it can't happen to you down the road, but I'm not gonna put you in jail right now. You go home today. You can sleep comfortable tonight. I will give you my cell phone number if you're worried about something. We're not going to come knocking on your door tonight, or tomorrow, or the day after . . . .

Escobedo also asked appellee if he would take a polygraph examination. Appellee agreed. After the initial interview with Thompson and Escobedo, appellee went to, or was taken to, Captain Colunga for the polygraph examination. Prior to the polygraph, Colunga presented appellee with a consent form. Appellee signed the consent form. Colunga also asked appellee questions about his background and the alleged sexual assault. After the polygraph, Colunga continued to question appellee about the alleged sexual assault. In Colunga's questioning of appellee after the polygraph, Colunga informed appellee he had the power to terminate the interview, saying: "You want to meet me halfway, meet me halfway. If you don't want to meet me halfway, well then don't meet me halfway, and I'll just pack up my stuff and leave. Okay. You're in control of this interview. It's gonna be up to Abel, whatever Abel wants to do."

After Colunga finished his questioning, appellee was further questioned by Escobedo. Escobedo again assured appellee that he would not be arrested and that he was free to leave. Specifically, Escobedo told appellee:

- No matter what details you give me right now, you're still going home.
- Are you worried about me arresting you? . . . You shouldn't.
- I want to get you home . . . .
- That door is unlocked. Feel free to get up and walk away.
- If you have nothing else to tell me, feel free to go.

At no point before, during, or after the interviews or polygraph was appellee given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), or warnings pursuant to article 38.22 of the Texas Code of Criminal Procedure. Appellee was not handcuffed or otherwise restrained. Appellee was never threatened or coerced. Appellee did not ask to terminate the interviews or the polygraph.

At no point before, during, or after the interviews or polygraph was appellee denied basic necessities. Appellee did not ask for food or drink. Shortly after the polygraph examination, Colunga offered appellee water or coffee, but appellee declined. Appellee did not ask for a break. Appellee did not ask to make any phone calls. Appellee did not ask to speak with his wife at any time. At one point, Thompson told appellee that he had made an effort to check on appellee's wife but was unable to find her. Appellee did not express any concern in response. Appellee did not ask Thompson to follow up, and he did not ask for an opportunity to find her himself. Appellee simply commented that his wife was probably in their personal vehicle because she had been waiting on a phone call.

At the conclusion of the interviews, at approximately 8:00 p.m., appellee left the Sheriff's office. Appellee was not arrested at that time or soon thereafter.

More than three years after the interviews, Appellee was indicted for the alleged sexual assault of his niece. Appellee filed a motion to suppress all evidence concerning his recorded statements and actions, including all evidence relating to his polygraph examination. The trial court conducted a hearing pursuant to *Jackson*

4

*v. Denno*, 378 U.S. 368 (1964). Thompson, Escobedo, and Colunga testified for the State. Appellee did not testify. The trial judge indicated that she would watch all of the videotapes of appellee's interviews and polygraph examination. Four months after the suppression hearing, the trial court granted appellee's motion to suppress in its entirety. The trial court did not enter findings of fact or conclusions of law at that time. This State's appeal followed.

On appeal, the State moved to remand the case to the trial court for the entry of findings of fact and conclusions of law. The appeal was abated to permit the trial court to enter findings of fact and conclusions of law and thereafter reinstated. Although appellee did not make hearsay objections or argue that his statements were more prejudicial than probative in his motion to suppress or at the suppression hearing, the trial court adopted proposed findings that appellee's statements constituted hearsay and were more prejudicial than probative.[1] The trial court also made factual findings to support a determination that appellee was in custody when he made the statements and actions at issue. Specifically, the trial court adopted the following proposed findings of fact and conclusions of law:

1. The defendant was charged with aggravated sexual assault of a child.

2. Law enforcement suggested defendant take a polygraph to "help clear" him. Defendant consented to the examination, where he denied the allegations. When law enforcement informed defendant that he did not pass the polygraph, the defendant continued to deny the charge, and, in frustration, stated, "Only God knows the truth!"

3. Defendant filed a motion to suppress statements made by defendant before, during, and after a polygraph examination.

---

[1] Presumably appellee proposed these findings of fact and conclusions of law, but it is not patently apparent in the record from where the proposed findings of fact and conclusions of law originated.

4. The Court considered video and audio evidence of the statements and the testimony of law enforcement.

5. During a hearing on the motion, the Court heard testimony from three former detectives of the Fort Bend County Sheriff's Department—Detective Escobedo, Detective Thompson, and Captain Colunga, a polygrapher.

6. [Proposed finding crossed out with the trial judge's initials.]

7. In the video, at no time did the accused make any admissions to the charged offense. He denied the offense repeatedly and over and over again.

8. All parties agree that any evidence of a polygraph is inadmissible.

9. Out of court statements, offered for the truth of the matter asserted, are hearsay under the Texas Rules of Evidence. Hearsay is excluded from being admitted into evidence except in a very few specific instances specifically because it is unreliable and not subject to confrontation or cross-examination.

10. A statement against interest provides an exception to the general prohibition against hearsay. Such statement is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . [to] expose the declarant to . . . criminal liability. Tex. R. Evid. 803(24)[.]

11. The defendant did not make any statements in the videos that constitute a statement against interest. Thus, all are hearsay and do not meet the stringent requirements of admitting an exception to hearsay before a jury.

12. All three videos, and the officer's testimony regarding what occurred during that time are excluded.

13. Under Rule 403 of the Texas Rules of Evidence a court must weigh the danger of undue prejudice against the probative value of the evidence.

14. The danger of unfair prejudice from the statements substantially outweighs the probative value. The statement is vague, at best, regarding whether it implicated defendant in the charged offense. Additionally, any attempt to admit the statements, but suppress any mention of the polygraph is far too distracting for a jury.

15. Last, the Court can find no way to meaningfully parse any portions of the interviews or the videos without again bringing to the forefront the issue of a polygraph, which by its very nature is inadmissible in any form, whether the result or the fact that it was taken, which naturally leads to questions about the results.

16. These findings are adopted and certified by this Court for the Court of Appeals.

The trial court also handwrote the following findings into the proposed findings of fact and conclusions of law before adopting them:

9A. The Defendant was seperated [sic] from his wife.

9B. The Defendant was not allowed to leave the room to speak to his wife.

9C. The Defendant was questioned in a small room at the [Fort Bend County] Jail for over an hour.

9D. The Defendant was escorted to Polygraph room by officers who had dominion and control over him.

9E. Officers stated the Defendant was not in custody, but never informed Defendant he was free to leave.

15A. Under the totality of the circumstances a reasonable person in Defendant's position would not have believed he was at liberty to terminate the interview and leave.

## II.    ANALYSIS

In three issues, the State challenges the trial court's grant of appellee's motion to suppress. First, the State argues that because appellee's confession was voluntarily given and he was not in custody, the police did not err by not "Mirandizing" appellee, and his statements should not be excluded on that basis.

Second, the State contends the trial court erred by concluding that appellee's statements should be excluded as hearsay. Third, the State asserts that the trial court erred by concluding that appellee's statements should be excluded as more prejudicial than probative. We agree in all respects.

## A.     Standard of review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion and overturn the ruling only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We give almost complete deference to the trial court's determination of historical facts, but we review the court's application of the law to those facts de novo. *Story*, 445 S.W.3d at 732; *Dixon*, 206 S.W.3d at 590. We are not bound by the trial court's findings and conclusions that are not supported by the record. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("[W]hen evidence is conclusive, such as . . . 'indisputable visual evidence,' then any trial-court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling." (quoting *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring))); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give deference to trial court's implicit findings that were contradicted by videotape evidence and noting that such evidence did not involve credibility assessments to which reviewing courts must defer).

Where, as here, the trial court has made express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the fact findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App.

8

2010). We sustain the trial court's ruling if it is supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.

## B. Custody

We first address the issue of custody. The State argues the trial court erred in granting the motion to suppress because appellee was not in custody at the time of his statements; therefore, no violation of *Miranda* or article 38.22 occurred requiring suppression of his statements. The record supports the State's position.

*Miranda* warnings and article 38.22 requirements are mandatory only when there is a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The meaning of "custody" is the same for purposes of *Miranda* and article 38.22. *Id.* The defendant bears the initial burden to prove that a statement was the product of a custodial interrogation. *Id.* The State has no burden to show compliance with *Miranda* unless and until the record as a whole "clearly establishes" that the defendant's statement was the product of a custodial interrogation. *Id.*

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree that he was not at liberty to leave. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 323–25 (1994)); *see also Herrera*, 241 S.W.3d at 525. The "reasonable person" standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254. The subjective intent of an officer to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Id.* (citing *Stansbury*, 511 U.S. at 324).

9

Stationhouse questioning does not, in and of itself, constitute custodial questioning. *Dowthitt*, 931 S.W.2d at 255; *Nickerson v. State*, 312 S.W.3d 250, 256 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Custody does not occur merely because the suspect submits to and fails a polygraph test. *Dowthitt*, 931 S.W.2d at 255. However, the fact that an interrogation begins as noncustodial does not prevent custody from arising later, as police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation. *Id.*

Four general situations may constitute "custody": (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009); *Dowthitt*, 931 S.W.2d at 255. In the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt*, 931 S.W.2d at 255. In the fourth situation, the officers' knowledge of probable cause must "be manifested to the suspect" to constitute "custody." *Id.*

In this case, the trial court made factual findings to support a determination that appellee was in custody when he gave his statements.[2] Specifically, the trial court found that under the totality of the circumstances a reasonable person in appellee's position would not have believed he was at liberty to terminate the

---

[2] The trial court did not make a finding that the officers failed to give appellee *Miranda* warnings or warnings required under article 38.22. However, this issue was undisputed. At the suppression hearing, officers testified that appellee was not given warnings because he was not in custody.

interview and leave. In support of this finding, the trial court made the following findings:

- Appellee was separated from his wife.
- Appellee was not allowed to leave the room to speak to his wife.
- Appellee was questioned in a small room at the Fort Bend County Jail for over an hour.
- Appellee was escorted to the polygraph room by officers who had dominion and control over him.
- Officers stated that appellee was not in custody, but never informed appellee he was free to leave.

Appellee argues that the trial court's custody determination was reasonable, referencing the findings that detectives did not tell appellee he was free to leave and that detectives exercised "dominion and control" over appellee.[3]

However, a review of the suppression hearing transcript and the recording of appellee's interviews establish the trial court's findings and conclusions are not supported by the record, even when that record is viewed in the light most favorable to the trial court's ruling. Although appellee was separated from his wife during his interviews, he never requested to talk to his wife or any friend or family member. The trial court describes the interview room as small, but on the recording, the interview room appears well lit with ample room for a table and chairs, as well as the occupants.

There is no evidence in the record that officers exercised dominion and control over appellee, particularly when and if they escorted appellee to the polygraph room.

---

[3] Appellee does not cite any other conduct by Thompson, Escobedo, Colunga, or any other officer that establishes a reasonable person would believe his freedom of movement had been significantly restricted.

At the suppression hearing, neither Thompson nor Escobedo could remember whether they accompanied appellee to the polygraph room. The video recordings do not capture appellee's transport to the polygraph room, but on the video after the polygraph examination, Colunga asked appellee if he wanted to return to his vehicle.[4] Appellee did not testify that officers accompanied him to the polygraph room, much less that they exercised dominion and control over him while doing so. Appellee was not handcuffed or otherwise restrained on the way to the polygraph room or at any time during his interviews or the polygraph.

Although officers did not tell appellee he was free to leave in those exact words, at the beginning of the initial interview, appellee affirmed that he was at the Sheriff's office of his own free will. At the beginning of the second interview and polygraph examination, appellee signed a consent form. In the third interview, Escobedo specifically told appellee, "[F]eel free to go." Officers repeatedly informed appellee that he would not be arrested during the interviews and that he could return home at the conclusion of the interviews.

Appellee was not threatened, coerced, or denied basic necessities. Several times during the interview detectives left the room. Appellee never requested to leave, to take a break, or to make a phone call. Appellee did not ask for food or drink, and when offered a drink, he declined. Appellee did not ask to terminate the interviews or the polygraph. At the conclusion of the interviews, at approximately 8:00 p.m., appellee left the Sheriff's office. Appellee was not arrested at that time or shortly thereafter.

The record does not support the trial court's finding that, under a totality of the circumstances, a reasonable person in appellee's position would not have

---

[4] Appellee's response was inaudible.

believed he was at liberty to terminate the interview and leave. Indeed, the record does not support any finding that appellee was physically deprived of his freedom in any way, that detectives told appellee he could not leave, or that detectives created a situation in which appellee would believe his freedom of movement was significantly restricted. So we are left to consider the fourth general situation of custody, whether there was probable cause to arrest appellee. *See Dowthitt*, 931 S.W.2d at 255.

When interpreting the fourth situation to establish custody, the officer's knowledge of probable cause must be manifested to the suspect, and such manifestation could occur if information is related by the officer to the suspect or by the suspect to the officer. *Id.* However, the manifestation of probable cause does not automatically establish custody. Rather, custody attaches if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

Situations where the manifestation of probable cause triggers custody are unusual. *State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997); *Hodson v. State*, 350 S.W.3d 169, 174 (Tex. App.—San Antonio 2011, pet. ref'd). Courts often compare the facts in *Dowthitt* when determining if probable cause triggers custody. *See, e.g.*, *Hodson*, 350 S.W.3d at 174; *Garcia v. State*, 237 S.W.3d 833, 837 (Tex. App.—Amarillo 2007, no pet.). In *Dowthitt*, the Court determined the defendant was in custody after he admitted to being present during a murder because "a reasonable person would have realized the incriminating nature of the admission." *Dowthitt*, 931 S.W.2d at 257. But in addition to the incriminating statement, the Court noted the interrogation lasted approximately twelve hours before the defendant made the incriminating statement, and officers exercised control over him by accompanying him on restroom breaks and denying repeated

13

requests to see his wife. *Id.*

Here, appellee initially admitted that he "made a mistake ten years ago," but it is not clear that this was an admission to having any sexual contact with his niece. In the interview, appellee suggested the "mistake" was allowing his niece to enter his room.

Then, in response to specific questioning by Colunga about whether appellee had sex with his then eight-year-old niece, appellee made the following admission:

Colunga: We know the sex happened. Now, if it happened once, and you consider that a mistake, then say something. Okay, you made a mistake, man. You're human. Allright. You are a human being. You made a mistake.

Appellee: I'll tell you what. I'll say that it happened, and yes, I'm sorry. But only God knows.

Colunga: How many times did it happen?

Appellee: That one time.

Colunga: Just one time.

Appellee: Yes.

While this statement implicated appellee in the commission of a crime,[5] "unless the circumstances are unique, as in *Dowthitt*, 'this alone does not trigger custody.'" *Hodson*, 350 S.W.3d at 174 (citing *Garcia*, 237 S.W.3d at 837). After appellee's admission, none of the officers indicated to appellee there was probable cause to arrest him. On the contrary, immediately after appellee made this admission, Colunga left for a short break but assured appellee, "Nobody's going to arrest you. Nothing's going to happen. I'm not going to say anything." After Colunga returned from his break, Colunga asked appellee if he wanted Colunga to

---

[5] Inexplicably, the trial court found that appellee "did not make any statements in the videos that constitute a statement against interest."

take him to his vehicle. In the subsequent interview with Escobedo, Escobedo assured appellee that he would not be arrested then and that he was free to leave. Specifically, Escobedo told appellee:

- No matter what details you give me right now, you're still going home.
- Are you worried about me arresting you? . . . You shouldn't.
- I want to get you home . . . .
- That door is unlocked. Feel free to get up and walk away.
- If you have nothing else to tell me, feel free to go.

Other than appellee's admission, there were no circumstances present to lead a reasonable person to believe he was in custody. Accordingly, we conclude that the record does not support the trial court's finding that under the totality of the circumstances a reasonable person in appellee's position would not have believed he was at liberty to terminate the interview and leave. The trial court abused its discretion insofar as its grant of appellee's motion to suppress was based on the conclusion that appellee was in custody and did not receive the requisite warnings.

## C.    Voluntariness

Having found that appellee's statements were non-custodial, we next address the State's contention that appellee's statements were voluntary. With regard to voluntariness, the State first addresses flaws in the trial court's findings of fact and conclusions of law. The trial court made findings related to the voluntariness of appellee's statements but did not explicitly include a finding or conclusion that appellee's confession was involuntary. The State argues that this court should not presume the trial court based its suppression ruling on the trial court's "implied" finding that appellee's statements were involuntary because the court did not explicitly include voluntariness as a basis for its ruling. While the trial court was

not required to explicitly find appellee's statements were involuntary, we cannot conclude the trial court found otherwise because a finding of voluntariness would have required an explicit finding.

An oral confession or an oral admission that does not stem from custodial interrogation is only admissible evidence against the accused if it was given freely, voluntarily, and without compulsion or persuasion. Tex. Code Crim. Proc. art. 38.21 (West 2017); *Oursbourn v. State*, 259 S.W.3d 159, 171–73 (Tex. Crim. App. 2008); *Avellaneda v. State*, 496 S.W.3d 311, 316 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When the voluntariness of a statement is challenged and the statement is found to have been voluntarily made, article 38.22, section 6, of the Texas Code of Criminal Procedure requires the trial court to make written fact findings and conclusions of law as to whether the challenged statement was made voluntarily. *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004); *Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987). Article 38.22, section 6, is mandatory in its language. It requires a trial court to file its findings of fact and conclusions of law regarding the voluntariness of a confession whether or not the defendant objects to the absence of such omitted filing. *Urias*, 155 S.W.3d at 142; *Wicker*, 740 S.W.2d at 783.[6] If findings are not made, then an appeal should be abated for the trial court to perform its mandatory duty.[7] *See Wicker*, 740 S.W.2d at 783–84.

---

[6] *But see Urias*, 155 S.W.3d at 143 (Keller, P.J., dissenting from denial of reh.) (acknowledging uncertainty of law and suggesting more guidance be given as to whether this is one of few errors that is not forfeitable); *Hernandez v. State*, 387 S.W.3d 881, 887–88 (Tex. App.—San Antonio 2012, no pet.) (discussing this area of law as uncertain).

[7] In its motion to remand, the State prayed that this court "remand this case for the entry of findings of fact and conclusions of law with regard to the suppression order and the voluntariness of Appellee's confession in particular." The case was abated for the trial court to file findings of fact and conclusions of law, but this court's abatement order did not specifically direct the trial court to make findings of fact and conclusions of law with regard to the voluntariness of appellee's statements.

Article 38.22, section 6, requires the trial court to file its findings of fact and conclusions of law regarding the voluntariness of a statement only if it decides that the statement is voluntarily made. *Terrazas v. State*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). If we were to presume the trial court decided appellee's statements were voluntarily made, it would be necessary to abate the case and remand to the trial court for voluntariness findings. However, we are not required to make that presumption. Nothing in the record suggests that the trial court concluded appellee's statements were voluntarily made. Rather, a conclusion that appellee's statements were involuntary is consistent with the trial court's explicit (though unsupported) findings regarding the conditions of appellee's interviews. A conclusion that appellee's statements were involuntary is also consistent with the trial court's ultimate ruling that appellee's statements should be suppressed.[8] The trial court likely determined that appellee's statements were involuntary. It is also possible that the trial court made no determination with regard to voluntariness; such a decision was not necessary to the court's ruling. Regardless, the trial court's ruling cannot be sustained even if it were based on an implied finding that appellee's statements were involuntary.

A confession is involuntary, within the meaning of the federal due process clause, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *See Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995), *overruled on other grounds by Warner v. State*, 245 S.W.3d

---

[8] In *Mendoza v. State*, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012), the Texas Court of Criminal Appeals explained that, rather than presuming or guessing what historical facts were found by the trial court, appellate courts should abate cases for the trial court to clarify ambiguous, contradictory, or incomplete findings. *Mendoza* does not apply in this case because the trial court's findings support the trial judge's ultimate ruling and are neither ambiguous nor contradictory.

458 (Tex. Crim. App. 2008). The ultimate test is whether the defendant's will was "overborne" by police coercion. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Mason v. State*, 116 S.W.3d 248, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

As we discussed in our custody analysis above, there is no evidence in the record that officers exercised dominion and control over appellee. Appellee was not threatened or coerced. Appellee does not cite any coercion by Thompson, Escobedo, Colunga, or any other officer, that impacted appellee's will. Nothing in the record indicates "official, coercive conduct of such a nature" that any statement obtained is "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Mason*, 116 S.W.3d at 257 (citing *Alvarado*, 912 S.W.2d at 211). Consequently, we conclude that appellee's recorded statements were voluntary. Having concluded that appellee's statements were not the product of custodial interrogation and that they were voluntarily given, we sustain the State's first issue.

## D. Hearsay

We now address the State's contention that the trial court erred by concluding appellee's statements should be excluded as hearsay.[9] In its findings of fact and conclusions of law, the trial court noted that hearsay is generally inadmissible but that Texas Rule of Evidence 803(24) provides an exception to the general prohibition against hearsay where the declarant has made a statement against interest. The trial court went on to find that appellee "did not make any statements in the videos that constitute a statement against interest." As a result, the trial court concluded all appellee's statements were hearsay and inadmissible.

---

[9] Appellee did not assert his statements were hearsay in his motion to suppress or at the suppression hearing.

The State contends that the trial court erred by concluding a party opponent's statement is inadmissible hearsay because the Texas Rules of Evidence specifically state that statements of a party opponent are admissible regardless of whether they are statements against interest. We agree.

Texas Rule of Evidence 801(e)(2) provides that a statement is not hearsay if it is offered against a party and is a party's own statement. Tex. R. Evid. 801(e)(2); *Williams v. State*, 402 S.W.3d 425, 438 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). A party's statement is admissible under rule 801(e)(2) if the statement is the opponent's own statement and it is offered against him. *Id.* Whether appellee's statements constituted statements against interest is irrelevant to this determination.

Appellee is a party to this criminal prosecution. As a result, any statement made by him and offered against him by the State qualifies as an opposing party's statement. *See* Tex. R. Evid. 801(e)(2)(A); *see Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) ("A party's own statements are not hearsay and they are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements."). Because an opposing party's statements do not constitute hearsay when offered against the party, none of appellee's recorded statements is hearsay. The trial court erred by concluding otherwise. We sustain the State's second issue.

## E.     Prejudicial, probative, and polygraph

In its third issue, the State asserts that the trial court erred by concluding that appellee's statements should be excluded as more prejudicial than probative. The trial court concluded, "The danger of unfair prejudice from the statements substantially outweighs the probative value. The statement is vague, at best, regarding whether it implicates defendant in the charged offense. Additionally, any attempt to admit the statements, but suppress any mention of the polygraph is far too

distracting for the jury." The trial court further concluded that it could "find no way to meaningfully parse any portions of the interview or the videos without again bringing to the forefront the issue of a polygraph, which by its very nature is inadmissible in any form, whether the results or the fact that it was taken, which naturally leads to questions about the results."

The State asserts that appellee's statements were directly probative of the charged offense, and the trial court abused its discretion when it excluded them on the basis that they were unduly prejudicial under rule 403. The State further contends that mentions of the polygraph are not a basis to suppress the statements because the State had offered to redact all references to the polygraph.

Polygraph examinations are commonly used as investigative tools. *See Ex parte Renfro*, 999 S.W.2d 557, 561 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Though polygraph testing may be a helpful investigative tool, the existence and results of a polygraph examination are inadmissible for all purposes. *Leonard v. State*, 385 S.W.3d 570, 573 n.2 (Tex. Crim. App. 2012); *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). Consequently, we affirm the trial court's order insofar as it suppresses evidence of the existence of or references to the polygraph.

However, statements made during an interview preceding the polygraph, during the polygraph examination itself, or during an interview after the examination, may be admissible evidence. *Wright v. State*, 154 S.W.3d 235, 239 (Tex. App.—Texarkana 2005, pet. ref'd); *Marcum v. State*, 983 S.W.2d 762, 765–66 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *Hoppes v. State*, 725 S.W.2d 532, 535–37 (Tex. App.—Houston [1st Dist.] 1987, no pet.).[10] The proper procedure

---

[10] *See also Holt v. State*, No. 05–14–00914–CR, 2016 WL 3018793, at *22 (Tex. App.—Dallas May 18, 2016, pet. ref'd) (mem. op., not designated for publication); *Herrera v. State*, No.

20

for introducing such evidence before the jury is to redact from such evidence all references to the polygraph examination. *Wright*, 154 S.W.3d 235 at 239. The State acknowledged at the suppression hearing, and again in its brief, that the existence and results of the polygraph are inadmissible and must be redacted.

With regard to appellee's statements which do not reference the existence of the polygraph or its results, Texas Rule of Evidence 403 provides that a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. When conducting a rule-403 analysis, courts must balance: (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (citing, amongst others, *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990)). At a pretrial suppression hearing, "a trial court often will not have enough information before it to adequately apply these factors and assess whether the contested evidence's probative value is substantially outweighed by its prejudicial effects." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

In appellee's motion to suppress, appellee requested the trial court suppress "Testimony regarding any polygraph examination by any of the State's witnesses"; "Testimony regarding any of Defendant's answer, physical status, mannerisms or

---

10–05–00026-CR, 2005 WL 2877578, at *2 (Tex. App.—Waco Nov. 2, 2005, no pet.) (mem. op., not designated for publication).

any observations to questioning during any polygraph examination"; and "Testimony regarding any of Defendant's answers to questioning in relation to Defendant's performance or responses during a polygraph examination." Appellee argued "all evidence relating to a Polygraph, statements made during a polygraph examination and any references to such polygraph should be suppressed" because "the results of a polygraph are inadmissible for all purposes."

Appellee did not assert, in his written motion to suppress or at the hearing, that the danger of unfair prejudice from his statements substantially outweighed their probative value. Appellee did not present argument or evidence addressing the rule-403 factors. Appellee did not request, in his written motion to suppress or at the hearing, a finding from the Court that the polygraph evidence could not be parsed out of the recordings. There was no argument before the trial court that it could not effectively redact the polygraph examination and references to it without "distracting the jury" or "bringing to the forefront the issue of a polygraph." Accordingly, the State had no opportunity to respond such an argument or present argument or evidence concerning the rule-403 factors. The State had no opportunity to redact appellee's statements for the court's consideration in a rule-403 analysis. Without argument or evidence from either party regarding a rule-403 analysis, the court could not have had enough information before it in the pretrial suppression hearing to adequately apply the rule-403 factors and assess whether the contested evidence's probative value was substantially outweighed by its prejudicial effects. We find that the trial court abused its discretion in prematurely suppressing evidence of appellee's statements under rule 403. We sustain the State's third issue.

### III.   CONCLUSION

We affirm in part the trial court's order to the extent that it suppresses evidence of the existence of or references to the polygraph. We reverse in part the

22

trial court's order to the extent it suppresses evidence of statements made by appellee which do not reference the polygraph.  We remand the cause to the trial court for further proceedings consistent with this opinion.


/s/      Marc W. Brown
         Justice


Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).